IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN OTERO, individually and on behalf of a class of similarly situated individuals,<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>THOMAS J. DART, SHERIFF OF COOK COUNTY and COOK COUNTY, ILLINOIS<br><br>　　　　　　Defendants. | Case No. 1:12-cv-03148<br><br>Honorable Amy J. St. Eve<br><br>Magistrate Judge Michael T. Mason |

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Dated: July 19, 2013

Myron M. Cherry
Jacie C. Zolna
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Phone: (312) 372-2100

Robert M. Foote
Kathleen Currie Chavez
Peter Lawrence Currie
Matthew J. Herman
FOOTE, MIELKE, CHAVEZ & O'NEIL LLC
10 West State Street, Suite 200
Geneva, Illinois 60134
Phone: (630) 232-7450

*Attorneys for Plaintiff and the Class*

## I. INTRODUCTION

Plaintiff has brought this action on behalf of himself and others who were victimized by Defendant's policy of unconstitutionally detaining free citizens following acquittal at trial. Rather than expeditiously freeing those found not guilty of the charges against them, Defendant instead manacles them, herds them together with inmates of the general prison population, and subjects them to a labyrinthine ordeal during which they are locked and confined in a series of holding cells and – having been forced once again to don prison-issue jumpsuits – even returned to their original jail cells precisely as if they had been found guilty of the most heinous of crimes. And then they wait. And they continue to wait, generally for several hours, until Defendant finds the time to complete a post-acquittal check for warrants and to navigate a host of other administrative checkpoints that have been needlessly interposed between these prisoners' supposed victories at trial and their freedom-in-fact. As two commentators recently remarked about this astonishingly everyday travesty:

> That doesn't happen in the United States, right? Wrong. As several acquitted defendants in Cook County will tell you, this is not a make-believe scenario. It is standard policy in Cook County. And it's unconstitutional and should be changed.

Terrence J. Truax and Sarah F. Weiss, *Not guilty, but not free: Cook County violates rights of the acquitted*, Chicago Dailey Law Bulletin, April 29, 2013 (Volume 159, No. 84), a copy of which is attached hereto as **Ex. A**.

Nor does Defendant contest the key facts of this case. Defendant unhesitatingly admits that, although detainees like Plaintiff "acquire rights as to [their] freedom … as a result of [a] not guilty verdict," the Sherriff's Office has no "procedures [in place] to protect his rights as a free man … when he is in the Sheriff's possession after he has been declared a free man and has acquired the rights of being a free man…." Deposition of Michael Charles Holmes ("Holmes

Dep."), pp. 34:6-35:13, 58:8-16, attached hereto as **Ex. B**.  In short, Defendant "do[es]n't have any system in place to differentiate between murderers and people who are acquitted at the end of each trial day."  *Id.*, p. 105:2-9; *see also id.*, pp. 103:24-104:9 ("[T]he fact that [an inmate] was acquitted is not taken into consideration at all at the end of that day…. His acquittal's – hasn't had any impact so far.  On the system.  He's been acquitted, but [Defendant does not] officially recognize[] it in any way.").

But because individuals who are found not-guilty or are otherwise acquitted are free citizens entitled to a prompt release, the practices employed by Defendant violate their constitutional rights.  Indeed, detaining and transporting innocent citizens in the same holding cells with other inmates not only substantially and unnecessarily increases the procedural steps for releasing the individual, but also creates a serious risk that the individual will be the victim of a violent assault.[1]  The same is true with Defendant's practice of processing every acquitted inmate back into the actual prison population only to process the individual out several hours later.  There can be no possible justification for these practices, particularly since there are no longer any flight or safety concerns with respect to these free citizens.  Indeed, Defendant's own recent practices have demonstrated that its violations of the constitutional rights of Plaintiff and the class are entirely avoidable.  *See Bullock v. Dart*, 599 F. Supp. 2d 947, 953-54 (N.D. Ill. 2009) (discussing Defendant's very different post-acquittal treatment of female acquittees who "are segregated into a separate bullpen within the RCDC while the [staff] reviews their records to determine if they are eligible for release" and then "may elect whether to return to their

---

[1] In fact, this is exactly what happened to Plaintiff.  While being detained in a holding cell with other inmates after his acquittal, other inmates asked Plaintiff about the outcome of his trial. After informing them that he had been found not guilty and would be leaving jail, some of the inmates punched and pummeled Plaintiff about the face and body.  *See* Complaint (Doc. 1), ¶¶ 30-31, attached hereto as **Ex. C**; Deposition of Brian Otero, pp. 25:4-26:18, attached hereto as **Ex. D**.

divisions to retrieve their personal property … or instead to be discharged immediately and return within thirty days for their personal property.").

Moreover, every acquitted male inmate during the relevant time period was subjected to the very same practices. As Defendant's Rule 30(b)(6) representative admitted:

> Q. Is it your testimony that Mr. Otero was treated exactly like any other person who at that time was scheduled to be discharged?
>
> A. Yes.
>
> \*\*\*
>
> Q. Okay. So there's no difference between how, according to your testimony and the Sheriff's testimony, how Mr. Otero was treated in terms of his discharge than any other person who would be in a class just like Mr. Otero for these purposes.
>
> \*\*\*
>
> A. According to my testimony, yes.

Holmes Dep. (**Ex. B**), p. 10:1-12.

Because the challenged aspects of Defendant's policy were applied in the same manner to all acquitted male detainees this case is suitable for class treatment. Indeed, the predominant issue in this case is whether such aspects render Defendant's policy unconstitutional, the resolution of which would apply equally to Plaintiff and every other class member. The Court, therefore, should certify this case as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

## II.     FACTUAL BACKGROUND

The Cook County Department of Corrections ("DOC") is located at 26th Street and California Avenue in Chicago, Illinois. The DOC is a three- to five-minute-walk from the Circuit Court building, which is connected to the DOC by a tunnel. *See* Holmes Dep. (**Ex. B**), pp. 14:6-9, 17:17-20, 19:8-11. The Sherriff's Office at the DOC maintains a file for every inmate, which is constantly updated and includes, among other things, a LEADS report (*i.e.*, a warrant check), documents from other agencies and all court documents reflecting, among other

3

things, all pending cases on which the inmate is being held. *Id.*, pp. 151:3-153:10. The Sherriff's Office also maintains an electronic file for each inmate, which shows, among other things, all pending cases pertaining to such inmate. *Id.* p. 176:15-25. Therefore, according to Defendant, it would be a "relatively quick operation" to determine whether an inmate was being detained on more than one case. *Id.*, p. 177:1-5.

When a detainee is acquitted in court, he is immediately taken into the custody of the Sherriff's Office and placed in a holding cell behind the judge's chambers. *Id.*, pp. 78:23-79:1, 80:7-8. The acquittee remains in this holding cell until a Sheriff's Deputy transports him to a larger holding area – referred to as the "bridge" – located in the basement of the Circuit Court building. *Id.*, pp. 83:15-84:20, 86:16-22. The bridge consists of eight holding cells (known as "bullpens"), which hold new inmates as well as other inmates returning from court. *Id.*, pp. 99:24-100:19. About 50 individuals are held in each bullpen at any given time. *Id.* The free citizens who were acquitted that day are not segregated from the other inmates, but rather are comingled with inmates who were convicted, remanded to the Sheriff's custody or otherwise returning from court. *Id.*, 82:17-83:11, 90:6-91:5, 95:5-21. As Defendant explained:

> Q. The not guilty person is treated along with the groups of the guilty person at that point at the bridge, with no differentiation made.
>
> A. Correct.
>
> Q. And all the not guilties are treated also alike because they're in the same group with everybody else who's treated the same without differentiation.
>
> A. Correct.

*Id.*, pp. 95:22-96:4.

Acquittees are then transported along with convicts and other inmates of indeterminate guilt from the bridge through the tunnel to a receiving room at the DOC where they are all

4

locked up together in yet another bullpen. *Id.*, pp. 107:5-10, 108:13-20. Eventually, a transport team arrives, and the detainees are called out one by one, handcuffed side-by-side, and transported back to their Division. *Id.*, pp. 108:21-112:19. At the Division, they are ID'd and locked together into another holding cell. *Id.*, pp. 113:8-17, 116:4-13. After yet more time passes, all of the detainees – acquittees and convicts alike – are processed back into the jail and brought to their respective living units. *Id.*, pp. 116:4-25, 117:9-25.

Defendant acknowledges that "all acquitted inmates go through this process" and that it "is without exception applicable to everybody at the end of each day at trial." *Id.*, pp. 111:14-17, 117:17-19. While Defendant has a written policy on handling court-ordered releases, that policy dictates procedures for processing an acquittee's release only *after* he has already begun being transported and processed back into the general prison population. *See* General Order 9.27, Section III.C., attached hereto as **Ex. E**.[2] Prior to that point in the process, the Sherriff's Office has no policies in place that distinguish acquittees from other inmates or to timely deliver court-ordered releases to the DOC. *See* Holmes Dep. (**Ex. B**), pp. 103:24-105:13; 156:24-157:10.

While an acquittee sits, waiting in his jail cell, the DOC's Records Office reviews the court documents from all of the returning inmates from that day. Only at this point do the DOC policies begin to recognize his status as a prisoner acquitted of all charges; but even this is but the beginning of an ongoing process of reviewing the still-imprisoned citizen's file considering the possibility of his release. This policy and process requires yet another warrant check despite the fact that the acquittee's file *already includes* a warrant check. *See* Holmes Dep. (**Ex. B**), p. 151:7-21. The additional warrant check can take up to another two hours, during which time the acquittee sits and waits in his jail cell. *Id.*, p. 140:7-22. Moreover, Defendant intentionally waits

---

[2] While Section III.C.1 of General Order 9.27 states that a "Transportation Officer" shall separate court documents into categories, including possible discharges, there is no Transportation Officer assigned to transportations from the 26th and California courthouse. *See* Holmes Dep. (**Ex. B**), p. 178:1-6.

5

several hours before they even start this process because, as Defendant's representative put it, they want to wait until "the last second possible." *Id.*, p. 148:14-25.

Finally, the acquittee is retrieved from his cell and brought to an outtake area where his identity is verified and he is released to the upper floor to be led through yet two more checkpoints. *Id.*, pp. 187:11-189:17.[3] Plaintiff was subjected to these same exact procedures after his acquittal, which resulted in him being released from the DOC at approximately 3:00 AM on July 22, 2011 despite the fact that he was acquitted almost nine hours earlier, at 6:20 PM the previous day. *See* Deposition of Brian Otero (**Ex. D**), pp. 34:22-24, 51:10-14.[4]

### III.   ARGUMENT

The Court should certify this case as a class action because all of the prerequisites of Rule 23 are met. Under Rule 23(a), class certification is appropriate if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the plaintiff will fairly and adequately protect the interests of the class. If these four factors are met, the proposed class must also satisfy one of the Rule 23(b)

---

[3] The only time constraint contained in Defendant's written policy requires that once a call is placed to the Division after the Records Office completes the paperwork and warrant check, the Division officer then has two hours to bring the acquittee to the receiving unit. *See* General Order 9.27, Section III.C.3.d. (**Ex. E**). The call that initiates this limited time period, however, takes place after the acquittee has already been subjected to several hours of detention with other inmates and processed back into the jail, and it only pertains to the time it takes to bring the acquittee from the jail cell to the receiving area. *See* Holmes Dep. (**Ex. B**), pp. 165:11-167:10.

[4] There have been two prior class actions which involved allegations that the Cook County Sherriff's Office detained individuals for an unconstitutional period of time after their legal release from custody. *See Watson v. Sheahan*, 94-cv-6891, 1998 WL 708803, *1 (N.D. Ill. Sept. 30, 1998) ("This case was brought under 42 U.S.C. § 1983 on behalf of a class of individuals who were allegedly detained for an unconstitutional period of time after their legal release from custody.") and *Bullock v. Sheahan*, 568 F. Supp. 2d 965, 976 (N.D. Ill. 2008) (denying summary judgment on Plaintiffs' claim that "they were subjected to unreasonable delays in being released from the CCDC after receiving court-ordered discharges"). Despite the fact that these two prior cases resulted in multi-million dollar settlements in 1998 and 2011 respectively, the Sherriff's Office has not amended any of its procedures with respect to releasing acquitted individuals. *See* Holmes Dep. (**Ex. B**), pp. 175:4-176:14.

prerequisites. Here, Plaintiffs seek certification under Rule 23(b)(3) and, therefore, must demonstrate that common questions of law or fact predominate over any individual issues and that a class action is superior to other methods for fairly and efficiently litigating the claims.

This proposed class should be certified because all the requirements of Rule 23 are met.[5]

### A.  The Size of the Class Easily Satisfies the Numerosity Requirement

The putative class undoubtedly meets the numerosity requirement of Rule 23(a)(1). The class includes all male detainees in Cook County who were found not guilty or otherwise acquitted between April 27, 2010 and the present. According to the Sherriff's Office, approximately 50 to 300 individuals are released from the DOC *every day*, at least several of whom Defendant's records would show are being released due to an acquittal. *See* Holmes Dep. (**Ex. B**), pp. 69:22-25, 138:2-8. The class, therefore, likely comprises thousands if not tens of thousands of members. *See Swanson v. American Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969) (151 potential class members sufficient to satisfy numerosity requirement).

### B.  There Are Common Questions of Law and Fact

The commonality element of Rule 23(a)(2) is satisfied here because there are questions of law or fact common to the class. To satisfy this requirement, the class claims "must depend upon a common contention" that "must be of such a nature that it is capable of classwide

---

[5] Based on Defendant's admission that all individuals who were in its custody and who were found not guilty or otherwise acquitted were subjected to the same release policies described above, and based on the findings in *Bullock*, 599 F. Supp. 2d at 953-54 that female acquittees were subjected to a different set of procedures, the class definition set forth in the Complaint should be amended as follows:

> All males who were criminal defendants in Cook County, were detained at the time of trial or other proceeding and were found not guilty or otherwise acquitted at a trial or other proceeding and for whom the Sherriff's Office no longer had any legal right to detain from April 27, 2010 through the present.

*See Savanna Grp., Inc. v. Trynex, Inc.*, 10-cv-7995, 2013 WL 66181, *2-3 (N.D. Ill. Jan. 4, 2013) (permitting plaintiff to modify class definition in class certification motion without necessity of filing an amended complaint).

resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). "The fact that there is some factual variation among the class grievances will not defeat a class action." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Rather, a "common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Id.* at 1118.

Here, the claims of both Plaintiff and class members hinge upon the following common questions of fact and law:

1) the existence of a policy or practice of detaining citizens who were found not-guilty or otherwise acquitted by seizing and handcuffing them, detaining and transporting them in the same holding cells as the other regular inmates, processing them back into the general prison population and continuing to hold them for several hours until running a check for outstanding warrants; and

2) whether such a policy or practice is unconstitutional.

Defendant has admitted to maintaining the procedures in question and to applying those procedures equally to every single acquitted detainee. *See* Holmes Dep. (**Ex. B**), pp. 10:1-12 (admitting that "there's no difference between how ... [Plainitff] was treated in terms of his discharge than any other person who would be in a class just like [Plaintiff]"), p. 69:22-70:11 (stating that all "people to be released … would be treated exactly the same under [the Sherriff's] office's procedures"), pp. 95:22-96:4 ("[A]ll the not guilties are treated … alike because they're in the same group with everybody else who's treated the same without differentiation."), p. 105:10-13 ("[A]ll acquitted people are treated the same as every other acquitted person in the mix with the criminals."), p. 108:13-20 ("Q. But this system I described … that's all true in any given day for everybody in the courthouse…. A. Correct."), p. 111:14-17 ("Q. [T]his process I

described is without exception applicable to everybody at the end of each day at trial. A. Yes."), p. 117:9-19 ("[A]ll acquitted inmates go through this process.").

The constitutionality of Defendant's policy is also common to each class member, and the resolution of this issue will apply with equal force to the entire class "in one stroke." *Dukes*, 131 S. Ct. at 2545.; *see also Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008) (finding detainees' claims challenging the constitutionality of a medical policy met commonality requirement); *Young v. County of Cook*, 06-cv-552, 2007 WL 1238920 (N.D. Ill. Apr. 25, 2007) (finding commonality requirement met in strip-search class action because "the claims of both proposed classes are premised upon contentions that the defendants acted pursuant to policies and standard practices that were common to all class members."); *Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609, 612 (N.D. Ill. 2009) (same); *Parish v. Sheriff of Cook Cnty.*, 07-cv-4369, 2008 WL 4812875, *4 (N.D. Ill. Oct. 24, 2008) ("[P]laintiffs have identified two factual and legal issues common to the class: whether defendants enforce the alleged policy and whether that policy violates the Fourteenth Amendment. *** Plaintiffs' claims clearly share the same legal theory and therefore meet the commonality requirement."); *Jackson v. Sheriff of Cook Cnty.*, 06-cv-0493, 2006 WL 3718041, *4 (N.D. Ill. Dec. 14, 2006) (finding class action challenging jail's standardized STD testing met commonality requirement); *Barnes v. Dist. of Columbia*, 242 F.R.D. 113, 122 (D.D.C. 2007) (certifying class of inmates alleging they were unreasonably detained after release date, finding that whether "the overdetention … practices were municipal policies and whether [they] violated the Constitution" were common questions that satisfied the requirements of Rule 23(a)(2)); *Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003) (same).

For these reasons, the commonality element of Rule 23(a)(2) is satisfied.

9

**C.      Plaintiff's Claims Are Typical of the Class**

Rule 23(a)(3) is satisfied because Plaintiff's claims are typical of the claims of other class members. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "Whether [a plaintiff's] claims are typical of those of the class members she represents is closely related to the commonality inquiry." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Indeed, "[a] finding that commonality exists generally results in a finding that typicality also exists." *Levitan v. McCoy*, 00-cv-5096, 2003 WL 1720047, *4 (N.D. Ill. Mar. 31, 2003). "The Rule does not require that each member of a class suffer exactly the same injury as the named class representative." *Id.* "Even when factual differences exist, similarity of legal theory satisfies the requirement." *Id.*

Here, the typicality requirement is plainly met. The named Plaintiff's claim arises out of the very same policy that was applied in the very same manner to every single class member. In other words, the named Plaintiff's claim and the claims of other class members arise under common legal theories and are based on the same conduct. *See, e.g., Bynum*, 214 F.R.D. at 34 (finding that plaintiff in proposed over-detention class action met typicality requirement, noting that "[d]espite the varying lengths of each named plaintiffs' overdetention … all members of the class are advancing the same legal theory based on the same set of facts, namely, that their constitutional rights were violated when they were detained later than their release period").

Accordingly, the typicality requirement of Rule 23(a)(3) is satisfied.

**D.     Plaintiff and His Counsel Will Fairly and Adequately Represent the Class**

Plaintiff and his counsel will fairly and adequately represent and protect the interests of the class. First, there are no antagonistic interests or conflicting claims between Plaintiff and the class he represents. Rather, Plaintiff's interest in pursuing claims based on common legal theories coincides with the interests of the members of the class. Second, Plaintiff has retained attorneys who are nationally-known litigators with decades of experience in class actions and other complex litigation, who are ready, willing and able to vigorously prosecute this action on behalf of the class. *See* Firm Backgrounds, attached hereto as **Ex. F** and **Ex. G**. The requirements of Rule 23(a)(4) are therefore satisfied.

**E.     Issues Common to the Class Predominate**

The requirements of Rule 23(b)(3) are met here because the common issues of law and fact predominate over any individuals issues that may exist and a class action is superior to other available means for the fair and efficient adjudication of this controversy. "The predominance requirement of Rule 23(b)(3) [is] satisfied" when "the central questions in the litigation are the same for all class members." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010). When, like here, "a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation." *Young*, 2007 WL 1238920, *7.

The central issues in this case (*i.e.*, those that predominate) are identical for every single class member. Indeed, the evidence demonstrates that Defendant's policies applied across the board and in the same manner to every single class member. *See* Holmes Dep. (**Ex. B**), pp. 10:1-12, 69:22-70:11, 95:22-96:4, 105:10-13, 108:13-20, 111:14-17, 117:9-19. The resolution of whether those policies are unconstitutional would be equally applicable to Plaintiff as it would be

to all class members. Courts in this District have repeatedly certified similar class actions challenging the constitutionality of inmate and/or detention policies, consistently finding that:

> The predominant issues in the litigation … will be the existence and constitutionality of the defendants' alleged policies. A class action is the most efficient device for this kind of case because the legality of the policies can be determined in one proceeding.

*Parish*, 2008 WL 4812875, *5; *Bullock*, 599 F. Supp. 2d at 976-77 (denying defendant's motion for summary judgment on over-detention claim brought on behalf of a certified class); *Young*, 2007 WL 1238920, *7-8; *Streeter*, 256 F.R.D. at 614; *Jackson*, 2006 WL 3718041, *5-6; *see also Barnes*, 242 F.R.D. at 123; *Bynum v*, 214 F.R.D. at 39 ("The Court has already determined the existence of at least one common question of fact (whether defendant has detained the class members later than their scheduled release date) and at least one common question of law (whether these alleged overdetentions violate the Fourth, Fifth, and Eighth Amendments). A resolution of these two questions, which are common to all of the class members' claims, would dispose of the issue of whether defendant is liable to plaintiffs in this action.").

Any argument that damages amongst class members could potentially vary does not defeat Rule 23(b)(3)'s predominance requirement. *See De La Fuente*, 713 F.2d at 233 ("It is very common for Rule 23(b)(3) class actions to involve differing damage awards for different class members."). Such an argument has been consistently rejected in similar § 1983 cases. As one court explained:

> Defendants argue that individual issues relating to damages will predominate over the question of whether the male inmates' constitutional rights have been violated. Plaintiffs seek only monetary damages and the amount of damages each plaintiff is entitled to will rely, in part, on the level of emotional distress experienced by that plaintiff. However, the fact that damages may vary among plaintiffs is not a sufficient reason to deny certification.

*Bullock v. Sheahan*, 225 F.R.D. 227, 230 (N.D. Ill. 2004); *see also Calvin v. Sheriff of Will Cnty.*, 03-cv-3086, 2004 WL 1125922, *5 (N.D. Ill. May 17, 2004) ("The fact that damages may vary

12

based on each plaintiff's mental state is not … a sufficient reason to deny certification…."); *Parish*, 2008 WL 4812875, \*6 (same); *Bynum*, 214 F.R.D. at 39 ("Defendant has pointed out that if plaintiffs succeed in establishing that they are entitled to damages, the award that each individual class member is entitled to may vary significantly. Nevertheless, even if accepted as true, this single fact would not preclude a finding that common questions of law and fact predominate over individual questions."); *Barnes*, 242 F.R.D. at 123 ("The dominant issues in this case … go to liability-whether the overdetentions amount to an unconstitutional municipal policy…. These issues dwarf whatever unique issues might arise at the damages stage."). Because the merits of this case will be decided predominantly, if not entirely, on issues common to the entire class the predominance requirement of Rule 23(b)(3) is met.[6]

Resolving this controversy as a class action is also superior to other methods. Because this case involves similar, if not identical claims, of thousands of individuals against the same defendant, "class certification promises greater efficiency and consistency than serial litigation of nearly identical individual cases." *Barnes*, 242 F.R.D. at 123-24. This will minimize the costs of discovery, motions and trial, and prevent a multiplicity of cases addressing identical issues that would unduly and unnecessarily congest the judicial system. *See Young*, 2007 WL 1238920, \*8 ("From the standpoint of judicial economy, handling even a modest portion of the potential claims of detainees likely would overwhelm the docket in this District."); *Jackson*, 2006 WL 3718041, \*6 ("To rehear this same question for each prisoner defies logic, and the case therefore demands the efficiency of scale that Rule 23 provides.").

---

[6] The mere fact that there may be slight variations in the length of each class members' detention is similarly insufficient to defeat class certification as Plaintiff's claim is based on a common course of conduct that every acquitted inmate is subjected to without exception, not any particular length of detention (albeit that lengthy detentions are the natural by-product of such practices). *See, e.g., Bynum*, 214 F.R.D. at 34 (certifying over-detention class action "[b]ecause it was this alleged course of conduct that caused injury to the plaintiffs [even though it was] to varying degrees based on the length of time of their overdetention").

13

A class action is also superior because it is unlikely that most class members would pursue these claims on their own. *See Bynum*, 214 F.R.D. at 40 ("[M]any of the individual class members who were allegedly overdetained for relatively short time periods may stand to recover only a small amount of damages. As such, the interest of class members in individually controlling the prosecution of separate actions against defendant appears to be relatively low."); *Barnes*, 242 F.R.D. at 124 (same). There will also be no difficulties in managing this case as a class action as the identity of class members can be determined from Defendant's records. *See* Holmes Dep., (**Ex. B**), pp. 178:22-179:5, 179:15-20; *see also Barnes*, 242 F.R.D. at 124 ("The manageability of the action is patent on its face: notice to class members can be achieved, in most cases, by mailing notice to the last known addresses provided by D.O.C. databases.").

Accordingly, the superiority requirement of Rule 23(b)(3) is also met.

**F.     In the Alternative, Certification is Appropriate Under Rule 23(b)(2) or Rule 23(c)(4)**

For the reasons set forth above, the Court should certify this case as a class action pursuant to Rule 23(a) and Rule 23(b)(3). In the event the Court disagrees for any reason, Plaintiff requests certification pursuant to Rule 23(b)(2) as Plaintiff also sought a declaration that the "the policies or practices challenged herein are illegal and violative of the Constitutional rights secured to Plaintiff and the Class." Complaint (**Ex. C**), Wherefore Clause (ii); *see also McKenzie v. City of Chicago*, 175 F.R.D. 280, 290 (N.D. Ill. 1997) (certifying class action pursuant to Rule 23(b)(2) seeking " a declaration that the defendants' actions in implementing the Ordinance and operating the Fast Track program are unconstitutional"); *Westefer v. Snyder*, 00-cv-162, 2006 WL 2639972, *9 (S.D. Ill. Sept. 12, 2006) ("Rule 23(b)(2) is routinely employed as a tool to vindicate the civil rights of prison inmates.") (citing cases). Class certification would also be appropriate pursuant to Rule 23(c)(4) with respect to the specific

14

issues of the existence and constitutionality of Defendant's release policies as those issues are unquestionably common to Plaintiff and every class member  *See* FED. R. CIV. P. 23(c)(4) ("[A]n action may be brought or maintained as a class action with respect to particular issues.").[7]

**WHEREFORE,** Plaintiff respectfully requests the Court to enter an order (i) certifying this case as a class action, (ii) designating Plaintiff as the representatives of the class, and (iii) appointing Myron M. Cherry and Jacie C. Zolna of Myron M. Cherry & Associates, LLC and Robert M. Foote of Foote, Mielke, Chavez & O'Neil LLC as class counsel.

Dated:  July 19, 2013

Respectfully Submitted,

BRIAN OTERO, individually and on behalf of all others similarly situated,

By: _____/s/ Jacie C. Zolna_____
One of the Attorneys for Plaintiffs and the Class

Myron M. Cherry
Jacie C. Zolna
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois  60602

Robert M. Foote
Kathleen Currie Chavez
Peter Lawrence Currie
Matthew J. Herman
FOOTE, MIELKE, CHAVEZ & O'NEIL LLC
10 West State Street, Suite 200
Geneva, Illinois 60134

*Attorneys for Plaintiff and the Class*

---

[7] Plaintiff also sought to enjoin Defendant from engaging in any further unlawful practices or policies and to implement release policies that do not violate the constitutional rights of free citizens acquitted on criminal charges.  *See* Complaint (**Ex. C**), Wherefore Clauses (iii) and (iv).  As shown above, Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class, which provides a further grounds for certifying the class under Rule 23(b)(2).  The Court, however, struck the prayer for injunctive relief from the Complaint on the grounds that Plaintiff lacked standing to seek such relief.  *See* October 18, 2012 Order (Doc. 24).  Plaintiff raises this issue here solely to preserve it.

15

## *CERTIFICATE OF SERVICE*

The undersigned hereby certifies that he served the foregoing **Plaintiff's Motion for Class Certification and Memorandum of Law in Support Thereof** upon:

Anthony Zecchin
Cook County State's Attorney's Office
50 West Washington Street, Room 500
Chicago, Illinois 60602
anthony.zecchin@cookcountyil.gov

via the electronic filing system on this 19th day of July, 2013.


      /s/ Jacie C. Zolna