IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN OTERO, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 12-cv-3148 |
| THOMAS J. DART, SHERIFF OF COOK COUNTY, and COOK COUNTY ILLINOIS, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Brian Otero has sued the Cook County Sheriff for allegedly violating his Fourth and Fourteenth Amendment rights by detaining him for an unreasonable amount of time and in an unreasonable manner after a jury acquitted him of all charges.[1] Plaintiff now moves to certify a class pursuant to Federal Rule of Civil Procedure ("Rule") 23. (R. 41, Mot.) For the following reasons, the Court denies Plaintiff's motion for class certification. The Court denies Plaintiff's motion with prejudice to the extent he seeks to certify a class based on the alleged unreasonableness of the delay in releasing acquitted detainees from Cook County Jail, and without prejudice to the extent he seeks to certify a class challenging one or more specific detention procedures applied to acquitted detainees.

---

[1] Otero joined Cook County as a party pursuant to *Carver v. Sheriff of LaSalle County,* 324 F.3d 947, 948 (7th Cir. 2003). Cook County is an indispensable party to this suit because state law requires the county to pay judgments entered against the Sheriff's Office in its official capacity. *Id.* To the extent that Otero alleged substantive claims against Cook County in the Complaint, the Court dismissed those claims under Rule 12(b)(6) on October 18, 2012. (*See* R. 24 at 12.)

**BACKGROUND**

Plaintiff Brian Otero alleges that Defendants maintain an unlawful policy or practice of "detaining, holding in custody, or imprisoning free citizens following a trial or other proceeding at which the citizen is found not-guilty or otherwise acquitted." (R. 1, Compl. ¶ 1.) According to Plaintiff, "[f]rom the time of the 'not guilty' verdict or judgment in favor of the criminal defendant, through the final processing step at the jail, Plaintiff and [c]lass members are subjected to Defendants' illegal policies and/or procedures which result in class members being detained for unreasonable amounts of time and in an unreasonable manner." (*Id.* ¶ 2.)

Chicago police arrested Plaintiff for an alleged burglary on November 23, 2009. Plaintiff was charged with burglary and held in Cook County Jail pending trial because he could not afford to make bail. Plaintiff stood trial for burglary in July 2011. On July 21, 2011 at approximately 6:20 p.m., the jury returned a verdict finding Plaintiff "not guilty" of all charges. Plaintiff had no outstanding warrants at the time of his acquittal. The Sheriff's Office, however, did not release Plaintiff from Cook County Jail until 3:00 a.m., nearly nine hours after the jury returned its verdict. In the meantime, the Sheriff's Office took Plaintiff back into custody, returned him to Cook County Jail, and processed him back into the general prison population.

The Sheriff asserts that these post-judgment procedures exist because "[w]hen a detainee is acquitted, the Cook County Jail staff do not yet know if that detainee can be released from [jail]." (R. 44, Def. Resp. Br. at 2.) While the staff checks for pending cases, outstanding warrants, and other circumstances that may prevent an acquitted detainee's release, the Sheriff's Office subjects the acquitted detainees to the same procedures applied to any detainees returning from court.

The Sheriff's Office (or a court security officer) places an acquitted detainee into custody and transports him back to Cook County Jail. For detainees who stood trial at the Cook County Criminal Courts Building, the Sheriff's deputies transport the acquitted detainees through a series of holding cells on the way back to Cook County Jail. During this process, the deputies do not segregate the acquitted detainees from convicted felons, new detainees remanded to the Sheriff's custody, or any other detainees returning from court. Once the detainees arrive at Cook County Jail, officers handcuff the acquitted detainees side-by-side with all other returning detainees, transport them to their assigned divisions, and process them back into the general jail population.

While the acquitted detainee waits in jail along with the rest of the inmates, the Cook County Jail staff performs a series of checks to ensure that no grounds exist to hold the detainee. The staff does not begin this process, however, until it receives the court order releasing the acquitted detainee, which, Defendants assert, "can take hours." (Def. Resp. Br. at 3.) Once the staff receives the court order and identifies the detainee to whom the order applies, the staff retrieves and reviews the detainee's file (the "pack") to ensure that the Sheriff's Office should in fact release him. The staff also performs a LEADS check to determine if the detainee has any outstanding warrants or if the staff must contact any agencies before releasing the detainee. "In all cases, the records staff person makes inquiries into any and all possible warrants to rule out any measure that would hold that person in custody to avoid a wrongful release." (*Id.*) The warrants check can take up to two hours to complete.

After the records staff completes these checks, a sergeant and an auditor review the detainee's pack to ensure that his release is appropriate. If everything is in order, the sergeant

directs the correction officers to retrieve the detainee from his division. The detainee then passes through two identification check points before leaving the jail.

The Sheriff's Office follows these procedures for all acquitted detainees at Cook County Jail. (*See* Mot. at 4-5.) The amount of time it takes the Sheriff's Office to complete these procedures for a given acquitted detainee, however, varies based on several factors, including, among others, the amount of time it takes for the detainee's paperwork to arrive from the court, the distance from the courthouse to Cook County Jail for detainees arriving from suburban courthouses, the number of detainees for whom the records office staff must review packs on that particular day and time, and the results of the detainee's LEADS check. (*See* Def. Resp. Br. at 2-4.)

The Sheriff's Office followed these standard procedures with respect to Plaintiff Otero. The jury acquitted Plaintiff at approximately 6:20 p.m. The Sheriff's deputies then took Plaintiff back into custody and transported him to a series of holding cells and eventually back to Cook County jail. During the transport back to jail, the Sheriff's deputies did not segregate Plaintiff from the other detainees returning from court that day. Several of those detainees punched Plaintiff in the body and the head in one of the holding cells after learning that the jury had acquitted him. Once Plaintiff arrived at Cook County Jail, the correction officers handcuffed him along with the other detainees and processed him back into the general jail population to wait for the results of the records office's review of his pack. The Sheriff's Office released Plaintiff from Cook County Jail at 3:00 a.m., nearly nine hours after the jury had acquitted him.

In his Complaint, Plaintiff asserts that the Sheriff's unlawful detention policy and the Sheriff's continued detention of him after his acquittal constitute violations of 42 U.S.C. § 1983. (Compl. ¶ 1.) Plaintiff seeks to assert this claim on behalf of a class of similarly situated former

4

detainees in Cook County. (*Id.* ¶ 2.) Specifically, Plaintiff requests certification of the following class:

> All males who were criminal defendants in Cook County, were detained at the time of trial or other proceeding and were found not guilty or otherwise acquitted at a trial or other proceeding and for whom the Sheriff's Office no longer had any legal right to detain from April 27, 2010 through the present.

(Mot. at 7 n.5.)

## LEGAL STANDARD

To obtain class certification under Rule 23, a plaintiff must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b). *See Harper v. Sheriff of Cook County,* 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca–Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). In this case, Plaintiff argues that class certification is appropriate under Rule 23(b)(3) or, in the alternative, Rule 23(b)(2). (Mot. at 14.) A court may certify a Rule 23(b)(3) class where "questions of law and fact common to members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently resolving the dispute in question." Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(2), a court may certify a class where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

In order to grant class certification under Rule 23, the Court must be "satisfied, after a rigorous analysis" that the Rule's requirements are met. *Wal-Mart Stores, Inc. v. Dukes,* ––– U.S. –––, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (citation omitted). "'Failure to meet any of the Rule's requirements precludes class certification.'" *Harper,* 581 F.3d at 513 (quoting *Arreola v. Godinez,* 546 F.3d 788, 794 (7th Cir. 2008)). Satisfaction of these requirements, on

5

the other hand, categorically entitles a plaintiff to pursue his claim as a class action. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.,* 559 U.S. 393, 398-99, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2009). The plaintiff bears the burden of proving each disputed requirement by a preponderance of the evidence. *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012). District courts have broad discretion in determining whether the plaintiff has satisfied this burden. *See Reiter v. Sonotone Corp.,* 442 U.S. 330, 345, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979); *Messner,* 669 F.3d at 811.

## ANALYSIS

**I.     The Seventh Circuit's Decisions in *Harper* and *Portis***

In order to determine whether Plaintiff's proposed class satisfies Rule 23's requirements, a review of the Seventh Circuit's opinions in *Harper v. Sheriff of Cook County,* 581 F.3d 511 (7th Cir. 2009). and *Portis v. City of Chicago,* 613 F.3d 702 (7th Cir. 2010), is instructive. In *Harper,* the plaintiff claimed that the Sheriff of Cook County was unconstitutionally holding new detainees after bond had been posted. *See* 581 F.3d 511. The district court granted the plaintiff's motion for certification of a Rule 23(b)(3) class, but the Seventh Circuit vacated the decision, finding that class treatment of the plaintiff's claim was not appropriate. *Id.* at 512. The Seventh Circuit reasoned that the constitutionality of the detentions at issue depended on whether the length of the delay before the detainee's release was reasonable in any given case, which, in turn, depended on "how long each detainee was held after bond was posted and what justifications there might be for the delay on that particular day or for that particular detainee." *Id.* at 515. The court noted various justifications that may exist for any given delay, including "the time of day, whether the jail was processing an unusually large number of detainees at that time, whether other events occurring at the jail legitimately slowed processing times, whether the detainee's

6

lack of cooperation delayed processing, etc." *Id.* (citing *Lewis v. O'Grady,* 853 F.2d 1366, 1370 (7th Cir. 1988)). The court therefore determined that "[l]iability, to saying nothing of damages, would need to be determined on an individual basis. Thus, common issues do not predominate over individual issues, making this case inappropriate for class disposition." *Id.*

Similarly, in *Portis,* the Seventh Circuit reversed the district court's decision to certify a Rule 23(b)(3) class in a case challenging the Chicago Police Department's allegedly unconstitutional detention of individuals arrested for non-jailable offenses. *See* 613 F.3d 702. The plaintiffs contended that taking more than two hours to process and release those individuals made their detention unreasonable in violation of the Fourth Amendment. *Id.* at 703. The Seventh Circuit held that the district court erred in prescribing a two-hour limit to this process and, as a result, erred in certifying a class premised on the propriety of that limitation. *Id.* at 705. As the Seventh Circuit recognized, to prevail on their claim, the plaintiffs would need to show "that any particular detention was excessive, and the court must examine not only the length of a given detention but also the reasons why release was deferred." *Id.* The Seventh Circuit concluded that "[b]ecause reasonableness is a standard rather than a rule, and because one detainee's circumstances differs from another's, common questions do not predominate and class certification [was] inappropriate." *Id.*

## II. Plaintiff's Attempt to Distinguish *Harper* and *Portis* Is Unavailing

Plaintiff acknowledges that if he sought to challenge only the alleged unreasonableness of the Sheriff's delay in releasing acquitted detainees from Cook County Jail, *Harper* and *Portis* would preclude class certification. (*See* R. 46, Pl. Reply Br. at 8-10.) Plaintiff attempts to distinguish this case from *Harper* and *Portis,* however, on the grounds that here he is challenging specific aspects of the Sheriff's detention procedures that applied equally to all potential class

members, not just the allegedly unreasonable length of the delay in the release of potential class members after their acquittal. (*Id.* at 9.)

As Plaintiff notes, numerous courts in this district have granted class certification in cases where the plaintiffs have challenged the constitutionality of specific detention procedures on grounds other than an allegedly unreasonable delay in the detainee's release that results from those procedures. *See, e.g., Streeter v. Sheriff of Cook County,* 256 F.R.D. 609 (N.D. Ill. 2009) (claiming that the Sheriff's Office conducted group strip searches for detainees returning from court in an "unreasonable and unnecessarily humiliating manner"); *Parish v. Sheriff of Cook County,* No. 07 4369, 2008 WL 4812875 (N.D. Ill. Oct. 24, 2008) (alleging that the Sheriff had implemented a policy of denying or delaying necessary prescription medication to detainees at Cook County Jail); *Young v. County of Cook,* No. 06 C 552, 2007 WL 1238920 (N.D. Ill. Apr. 25, 2007) (challenging the constitutionality of the Sheriff's policy of strip searching every detainee that enters Cook County Jail, irrespective of the nature of the charges against him); *Jackson v. Sheriff of Cook County,* No. 06 C 0493, 2006 WL 3718041 (N.D. Ill. Dec. 14, 2006) (challenging the Sheriff's policy of requiring pre-trial detainees to undergo screening for sexually transmitted diseases without valid consent); *Bullock v. Sheahan,* 525 F.R.D. 227 (N.D. Ill. 2004) (alleging that the Sheriff's different treatment of male and female detainees with respect to the jail's "out-processing" procedures violated the Fourth and Fourteenth Amendments); *see also Flood v. Dominguez,* 270 F.R.D. 413 (N.D. Ind. 2010) (certifying class of pre-trial detainees allegedly held in holdings cells for more than 24 hours without bedding, personal hygiene items, allotted exercise time, and full meals).[2] In all but one of the cases

---

[2] Plaintiff also cites two cases from district courts in the District of Columbia in which the courts certified classes with respect to the plaintiffs' claims that the department of corrections had detained inmates "beyond the point at which their release had been ordered, for a period ranging from an extra day to many days or even months on end." *See Barnes v. District of Columbia,* 242 F.R.D. 113, 115 (D.D.C. 2007);

Plaintiff cites, class certification occurred pre-*Harper*. Neither *Harper* nor *Portis,* though, necessarily precludes class certification in these types of cases challenging the constitutionality of a specific detention procedure.

Indeed, the Seventh Circuit implicitly left open the possibility for class treatment where the plaintiff challenges the constitutionality of a particular detention procedure as long as the length of detention is not a central issue in the case. *See Harper,* 581 F.3d at 514. In *Harper,* the court noted that "Harper assured [the court] multiple times at oral argument that this case is not about searching and swabbing, and we take him at his word." *Id.* The court went on to explain that having "[f]ail[ed] to take issue with any particular intake procedure, Harper [was] left with a claim that the Sheriff [was] unconstitutionally holding detainees after bond ha[d] been posted." *Id.* at 514-15. The Seventh Circuit held that this claim was inappropriate for class disposition, but it did not necessarily foreclose class treatment, in an appropriate case, of claims challenging a specific intake procedure, like those that Harper had abandoned. *Id.* at 515.

The Seventh Circuit considered Harper's argument that a common issue—the assignment of a jail identification number to a detainee who had posted bond—predominated, but ultimately rejected it, finding that Harper "[was] trying to focus the class certification discussion around an issue that is not central to the litigation" in order to satisfy Rule 23(b)(3)'s predominance requirement. *Id.* The Seventh Circuit further noted that there was "nothing unconstitutional about assigning an identification number to a detainee who has been remanded to the custody of the Sheriff, unless it takes an unreasonable amount of time or is done in some unreasonable manner." *Id.* at 516. Because those were both "individual issues," the court held that Harper had failed to establish predominance. *Id.* In doing so, though, the Seventh Circuit left the door open

---

*Bynum v. District of Columbia,* 214 F.R.D. 27 (D.D.C. 2003). These cases, however, contradict the Seventh Circuit's holdings in *Harper* and *Portis,* which serve as binding authority on this Court.

for a plaintiff in an appropriate "overdetention-plus" case to obtain class certification if the plaintiff challenged a specific detention procedure on grounds other than the allegedly unreasonable amount of time that the procedure took to perform or the unreasonable manner in which the Sheriff's Office performed it.

Even if the Seventh Circuit would approve of class certification in certain "overdetention-plus" cases, though, Plaintiff bears the burden of establishing that *this* "overdetention-plus" case is amenable to class treatment. In *Flood v. Dominguez*—the only post-*Harper* decision Plaintiff cites regarding predominance—the District Court for the Northern District of Indiana certified a class of pre-trial detainees held in the Lake County, Indiana jail on the plaintiffs' claim that the sheriff unconstitutionally detained them in a holding cell for more than 24 hours without basic amenities such as bedding, personal hygiene items, time to exercise, and adequate food. *See* 270 F.R.D. at 420-22. The plaintiffs' core complaint in *Flood* was that the jail "had a policy of not providing detainees beds, mattresses, or other bedding on which to sleep," which, combined with other conditions in the holding cells, deprived the detainees of any meaningful sleep for over 24 hours. *Id.* at 416. The district court held that class certification was appropriate and distinguished *Harper* on the grounds that the common conditions to which the defendants allegedly subjected the detainees, not the length of their detentions, were the central issues in the case:

> [In *Harper*,] the only potentially common issue—whether it was reasonable to assign a jail identification number to a detainee before allowing him to be released on bond—did not predominate because the plaintiff's identification number was not central to the litigation. In contrast to *Harper*, the common issues here—lack of bedding, no hygiene items, no exercise, and inadequate food—are fundamental to the Plaintiffs' claims and allegedly gave rise to the injuries they suffered.

10

*Id.* at 420 (citations omitted).[3]

Plaintiff argues that the present case is more akin to *Flood* and other cases challenging specific detention procedures than it is to *Harper* and *Portis*, which dealt primarily with challenges to the allegedly unreasonable length of class members' detentions. (*See* Pl. Reply Br. at 9-10.) The allegations in the Complaint and Plaintiff's broad proposed class, however, belie Plaintiff's argument. The thrust of Plaintiff's claim is that the Sheriff's Office held acquitted detainees for an unreasonable amount of time after their acquittals. Although Plaintiff alleges generally in the Complaint that Defendants subjected him and other class members to unlawful policies that "result[ed] in class members being detained for unreasonable amounts of time *and in an unreasonable manner*" (*see* Compl. ¶ 1 (emphasis added)), most of Plaintiff's allegations focus on the allegedly unreasonable delay in his release, rather than the constitutionality of any specific detention procedures. (*See, e.g., id.* ¶¶ 14(a)-(b), 26, 29, 31-32.)

Furthermore, even where Plaintiff identifies specific procedures he challenges as "unreasonable" (*see id.* ¶¶ 27 (placing Plaintiff in handcuffs and transporting him back to the Cook County Jail after his acquittal), 28 (detaining Plaintiff in the "bullpen" upon his return to Cook County Jail)), he appears to challenge those procedures in large part on the grounds that they caused an unreasonable delay in his and other proposed class members' releases. (*See id.* ¶ 32.) Plaintiff alleges, for example, that holding an acquitted detainee in the general prison population while the Sheriff's Office performs the administrative tasks related to his release

---

[3] The court in *Flood* also distinguished *Harper* on the grounds that "the plaintiff in *Harper* did not limit the proposed class by the length of time detainees were held after they posted bond," while the plaintiffs in *Flood* limited the proposed class to only those detainees that defendants had held for more than 24 hours. *Id. Flood*, however, was decided two months before *Portis,* which reversed class certification in an "overdetention" case even though the plaintiffs included a two-hour limitation in the class definition. *See Portis,* 613 F.3d at 704-05 ("Given the contextual nature of the analysis under the fourth amendment, . . it is very hard to justify an inflexible two-hour rule. More than hard. It is impossible." (citation omitted)).

11

"substantially and necessarily increases the procedural steps for processing out an individual," and, it follows, increases the length of the detainee's post-acquittal detention. (*Id.*) Plaintiff further alleges that the Sheriff's policies regarding the performance of post-acquittal checks for warrants and holds "is a laborious and time consuming process that unnecessarily prolongs an individual's detention . . . ." (*Id.*; *see also id.* ¶ 29 (noting that Plaintiff remained locked in the "bullpen" for approximately twelve hours while Defendants conducted their procedures to process Plaintiff for release).)

Plaintiff's motion for class certification also focused largely on the unreasonable delay in the release of acquitted detainees, rather than challenges to any specific detention procedures applied to them irrespective of the time those procedures took or the time they added to an acquitted detainee's detention. (*See, e.g.,* Mot. at 1 ("Any then they wait. And they continue to wait, generally for several hours, until Defendant finds the time to complete a post-acquittal check for warrants and to navigate a host of other administrative checkpoints that have been needlessly interposed between these prisoners' supposed victories at trial and their freedom-in-fact."); *id.* at 2 ("But because individuals who are found not-guilty or are otherwise acquitted are free citizens entitled to a prompt release, the practices employed by Defendant violate their constitutional rights."); *see also id.* at 3-6.) Plaintiff attempts to distance his claims from pure "overdetention" claims in his reply brief in order to distinguish this case from *Harper* and *Portis* by arguing that he "is not claiming that the mere length of his or any other class member's detention was unreasonable . . . . Rather, Plaintiff challenges specific aspects of Defendants' release procedures (or lack thereof) that applied equally to all class members and which, collectively, create an unconstitutional policy or practice." (Pl. Reply Br. at 9.) The allegations in the Complaint, Plaintiff's broad proposed class, and even his arguments in his opening brief,

12

however, undermine Plaintiff's purported new position. Like in *Harper,* Plaintiff fails to explain how any of the specific detention procedures he challenges are unconstitutional "unless [they] take[] an unreasonable amount of time or [are] done in some unreasonable manner." *See Harper,* 581 F.3d at 516. Because those are individual issues, *see id.,* Plaintiff has not satisfied Rule 23(b)(3)'s predominance requirement. Fed. R. Civ. P. 23(b)(3). The Court, therefore, denies Plaintiff's request for certification of a Rule 23(b)(3) class.[4]

### III.    Rule 23(b)(2)

Plaintiff requests, in the alternative to his motion for certification of a Rule 23(b)(3) class, that the Court certify a Rule 23(b)(2) class. (Mot. at 14.) Rule 23(b)(2) permits certification of a class where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiff, however, does not have standing to obtain the prospective relief that he seeks. (*See* R. 24.) The Court dismissed Plaintiff's claim for injunctive and other equitable relief on October 18, 2012. (*Id.*) As the Court explained, Plaintiff does not have standing to seek prospective relief because although he previously was incarcerated in Cook County Jail, he is not currently detained there. (*Id.* at 8.) Any allegations that he may one day be arrested, detained in Cook County Jail, acquitted, and then detained after his acquittal, moreover, are too speculative to impart standing to seek prospective relief. (*Id.* at 9.)

---

[4] Plaintiff argues, in the alternative, that class certification is appropriate under Rule 23(c)(4), which permits a court, when appropriate, to certify a class with respect to particular issues only. (*See* Mot. at 14-15; Pl. Reply Br. at 14-15.) According to Plaintiff, "the issues of the existence and constitutionality of Defendants' release procedures . . . . are unquestioningly common to every class member." (Pl. Reply Br. at 14.) As explained above, however, the determination of whether Defendants' release procedures based on the length of the detention are constitutional is not suitable for class treatment under *Harper* and *Portis.* The Court, therefore, denies Plaintiff's request to certify a class on particular issues under Rule 23(c)(4).

13

Because the proposed class consists of previously acquitted detainees, nearly all proposed class members also likely lack standing to seek prospective relief. Certification of a Rule 23(b)(2) class is inappropriate under these circumstances. *See Dukes,* 131 S. Ct. at 2559-60 (finding that Rule 23(b)(2) did not authorize certification of a class where about half of the proposed class members lacked standing to seek injunctive or declaratory relief with respect to Wal-Mart's allegedly unlawful employment practices because they no longer worked for Wal-Mart).

Finally, Plaintiff fails to establish that "final injunctive relief or corresponding declaratory relief" would be appropriate with respect to the proposed class as a whole. Fed. R. Civ. P. 23(b)(2). The Seventh Circuit has held that overdetention claims require individualized inquiries into the length of an individual's detention and the potential justifications for the delay in that individual's release. *See Harper,* 581 F.3d at 514-16; *Porter,* 613 F.3d at 704-05; *see also Lewis,* 853 F.2d at 1370 ("We recognize that the administrative tasks incident to a release of a prisoner from custody may require some time to accomplish—in this case perhaps a number of hours. Reasonable time must be allowed for such matters as transportation, identity verification, and processing. . . . What is a reasonable time for detaining a prisoner in custody is a question best left open for juries to answer based on the facts presented in each case."). For these reasons, the Court denies Plaintiff's request to certify a class pursuant to Rule 23(b)(2).

## CONCLUSION

For the reasons explained above, the Court denies Plaintiff's motion for class certification. The denial is with prejudice to the extent Plaintiff seeks to certify a class based on the alleged unreasonableness of the delay in releasing acquitted detainees from Cook County

Jail, but without prejudice to the extent Plaintiff seeks to certify a class challenging specific detention procedures that the Cook County Sheriff applied to acquitted detainees.

DATED:  December 20, 2013

ENTERED

_____
AMY J. ST. EVE
U.S. District Court Judge