**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN OTERO, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS J. DART, SHERIFF OF COOK COUNTY, and COOK COUNTY ILLINOIS,<br><br>Defendants. | ) | Case No. 12-cv-3148 |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Brian Otero has sued the Cook County Sheriff for allegedly violating his Fourth and Fourteenth Amendment rights by detaining him in an unreasonable manner after a jury acquitted him of all charges.[1] Plaintiff has filed an Amended Class Action Complaint on behalf of himself and all other similarly situated male inmates. (R. 56, Amended Class Action Complaint.) Before the Court is Plaintiff's Renewed Motion for Class Certification. (R. 60, Mot.) For the following reasons, the Court grants Plaintiff's motion with a modification of the class definition.

**BACKGROUND**

Plaintiff Brian Otero filed his initial Complaint in April 2012, alleging that Defendants maintain an unlawful policy or practice of "detaining, holding in custody, or imprisoning free

[1] Otero joined Cook County as a party pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003). Cook County is an indispensable party to this suit because state law requires the county to pay judgments entered against the Sheriff's Office in its official capacity. *Id*. To the extent that Otero alleged substantive claims against Cook County in the Complaint, the Court dismissed those claims under Rule 12(b)(6) on October 18, 2012. (*See* R. 24 at 12.)

citizens following a trial or other proceeding at which the citizen is found not guilty or otherwise acquitted." (R. 1, Compl. ¶ 1.) Plaintiff alleged that "Defendants' illegal policies and/or procedures" subjected class members to "being detained for unreasonable amounts of time and in an unreasonable manner." (*Id.*, ¶ 2.) Plaintiff moved to certify the following class:

> All males who were criminal defendants in Cook County, were detained at the time of trial or other proceeding and were found not guilty or otherwise acquitted at a trial or other proceeding and for whom the Sheriff's Office no longer had any legal right to detain from April 27, 2010 through the present.

(R. 41, Mot. for Class Cert. at 7, n. 5.) On December 20, 2013, the Court denied Plaintiff's motion with prejudice to the extent that he sought to certify the class based on the alleged unreasonableness of the delay in releasing acquitted detainees from Cook County Jail, and without prejudice to the extent he sought to certify a class challenging one or more specific detention procedures applied to acquitted detainees. (R. 52.)[2]

On January 15, 2014, Plaintiff filed an Amended Class Action Complaint "on behalf of himself and other male inmates who were victimized by Defendant's policy of unconstitutionally detaining, holding in custody and imprisoning free citizens following an acquittal or other favorable disposition of the charges brought against them." (R. 56, ¶ 1.) Count I of the Amended Complaint alleges that this unlawful detention violates the Fourth and Fourteenth Amendments. Plaintiff specifically alleges that Defendants have:

> [A] policy or practice under which it shackles, transports and detains acquitted individuals to change back into their prison jumpsuit and be processed back into the general prison population. In fact, Defendant has conceded that it has no policies or procedures in place that distinguish acquittees from other inmates over whom Defendant has the continued right to detain or that in any way acknowledge an inmate's right to freedom that he acquires by virtue of an acquittal or other favorable disposition of the charges brought against him.

(*Id.* ¶ 8.)

[2] The Court presumes familiarity with its December 20, 2013 Memorandum Opinion and Order denying Plaintiff's motion for class certification.

With respect to his own circumstances, Plaintiff alleges that following his acquittal, and despite the fact that he had no other pending charges or warrants against him, Cook County Sheriff's officers seized him and placed him in handcuffs. (*Id.*, ¶ 17.) The Sheriff's Officers then detained Plaintiff with other regular inmates in a number of different holding cells and ultimately processed him back into his Division within the general prison population. (*Id*.) Plaintiff also alleges that while he was detained after his acquittal, other inmates "punched and pummeled Plaintiff about the face and body" after they learned that he was acquitted and would be leaving jail. (*Id.* ¶ 18.)

Plaintiff's Amended Complaint adds a second count for a violation of the Equal Protection Clause of the Fourteenth Amendment as, Plaintiff alleges, "similarly situated female acquitted inmates are not subjected to these policies or practices, but rather are segregated from other inmates and not returned to their original jail cells." (*Id.* ¶ 2.) Plaintiff asserts that these similarly situated females "are segregated from other inmates and are given the option to either remain in the receiving room or return to their jail cell while Defendant processes their release." (*Id*. ¶ 10.)

The parties have conducted class certification discovery and Plaintiff asserts the following facts in his motion for class certification. When a male detainee is acquitted or otherwise has the charges brought against him dismissed, he is immediately taken back into the custody of the Cook County Sheriff's Office ("Sheriff's Office") and placed in a holding cell behind the judge's chambers. The Sheriff's Office then transports him to a larger holding cell known as the "bridge," which is located in the basement of the criminal court building at 26th Street and California. The bridge consists of eight holding cells (known as "bullpens"), which hold new inmates as well as other inmates returning from court. Each bullpen holds

approximately 50 individuals at any given time. The Sheriff's Office does not segregate or otherwise treat differently the acquitted detainees from the other inmates.

Sheriff's officers then transport the acquitted detainees along with the regular inmates through a tunnel that connects the criminal court building to the Cook County Department of Corrections ("DOC"). Upon arrival at the DOC, Sheriff's officers hold the acquitted detainees with the regular inmates in another bullpen. Eventually, a transport team arrives and calls out the detainees one by one, handcuffs them, and transports them back to their respective Division. Upon arrival at the Division, the Sheriff's Office identifies each detainee and returns all of the detainees to another holding cell. At some point, the Sheriff's Office processes all of the detainees back into the Cook County Jail and their respective cells.

Although the DOC has a written policy on handling court-ordered releases, that policy identifies procedures for processing an acquitted detainee's release after he has already begun the process of transferring back into the general jail population. This DOC General Order, which addresses "inmate/detainee discharge procedures," assigns responsibility for reviewing court documents for acquitted detainees to a "Transportation Officer." There is no transportation officer assigned to the criminal courthouse at 26th Street and California. The DOC has no system or policy in place at the criminal court building to differentiate between acquitted detainees and other inmates. After the Sheriff's Office returns the detainees to their jail cells, the DOC's Records Office reviews the court documents from all of the returning inmates on that day. It is only after this process that the DOC retrieves the acquitted detainee from his cell, escorts him to an outtake area, verifies his identification, and releases him.

Defendant has acknowledged that it treated Mr. Otero in the same exact manner as every other acquitted detainee. Defendant also has acknowledged that female inmates who are

acquitted or otherwise ordered to be released do not undergo the same procedure. Rather than automatically returning female acquitted detainees to the Cook County Jail, the Sheriff's Office gives them the option of remaining in the receiving department or returning to their cells to collect and pack their own belongings.

## LEGAL STANDARD

To obtain class certification under Rule 23, a plaintiff must satisfy each requirement of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one subsection of Rule 23(b). *See Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Once a party satisfies the requirements of Rule 23(a), he must meet one of the requirements of Rule 23(b). In this case, Plaintiff argues that class certification is appropriate under Rule 23(b)(3) or, in the alternative, Rule 23(b)(2) or 23(c)(4). (Mot. at 14.) A court may certify a Rule 23(b)(3) class where "questions of law and fact common to members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently resolving the dispute in question." Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(2), a court may certify a class where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."

In order to grant class certification under Rule 23, the Court must be "satisfied, after a rigorous analysis" that the Rule's requirements are met. *Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (citation omitted). "'Failure to meet any of

the Rule's requirements precludes class certification.'" *Harper*, 581 F.3d at 513 (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)). Satisfaction of these requirements, on the other hand, categorically entitles a plaintiff to pursue his claim as a class action. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398-99, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2009). The plaintiff bears the burden of proving each disputed requirement by a preponderance of the evidence. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). District courts have broad discretion in determining whether the plaintiff has satisfied this burden. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979); *Messner*, 669 F.3d at 811.

## ANALYSIS

### I. Rule 23(a)

Plaintiff moves to certify the following class:

> All male inmates who while being detained by the Cook County Sheriff's Office were found not guilty, were acquitted, had charges brought against them dismissed or otherwise received a judicial determination requiring their release and for whom the Sheriff's Office no longer had any legal right to detain from April 27, 2010 through the present.

Plaintiff argues that the proposed class satisfies the requirements of Rule 23(a) and Rule 23(b)(3). When determining whether to certify a class, the Court must make an independent determination about the appropriateness of certifying the class. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003).

#### A. Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. Courts may not rely solely on the plaintiff's allegations as to the size of a class or the impracticability of joinder, and instead may rely on evidence to prove class size. *Szabo*, 249 F.3d at 676. In this case, Defendant has testified that on any given day the DOC could release

between 50 and 300 individuals, and that DOC's records would be able to identify who was released pursuant to an acquittal or other court order. Further, Defendant does not address or challenge Plaintiff's claim that he satisfies the numerosity requirement. The Court, therefore, finds that Plaintiff has satisfied the numerosity requirement.

**B. Commonality**

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (quotation and citation omitted). This requirement, however, does not mean that the proposed class members have merely "all suffered a violation of the same provision of law." *Id.* Rather, the claims of a class must depend upon a common contention, and that contention must be capable of classwide resolution. *Id*. "What matters to class certification is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Suchanek v. Sturm Foods, Inc.*, -- F.3d -- (7th Cir. Aug. 22, 2014) (quoting *Wal-Mart*, 131 S. Ct. at 2551). "The critical point is the need for *conduct* common to members of the class." *Id*. (citing *IKO Roofing Shingle Prods. Liab. Litig.*, No. 14-1532, 2014 WL 2958615 (7th Cir. July 2, 2014); *Keele v. Wexler* ,149 F.3d 589, 594 (7th Cir.1998). Where the defendant's allegedly injurious conduct differs from class member to class member, courts are not likely to find common answers. *Id*. Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, however, there is a common question. *Id*. (citing cases).

In *Harper v. Cook County*, 581 F.3d 511 (7th Cir. 2009), the Seventh Circuit reversed a district court's class certification of detainees because it reasoned that the constitutionality of the

detentions at issue depended on whether the length of the delay before the detainee's release was reasonable in any given case. This determination depended on "how long each detainee was held after bond was posted and what justifications there might be for the delay on that particular day or for that particular detainee." *Id.* at 515. The Seventh Circuit identified various justifications that may exist for any given delay and determined that "liability, to say nothing of damages, would need to be determined on an individual basis." *Id*.

In *Portis v. City of Chicago*, 613 F.3d 702 (7th Cir. 2010), the Seventh Circuit reversed a district court's decision to certify a Rule 23(b)(3) class in a case challenging the Chicago Police Department's allegedly unconstitutional detention of individuals arrested for non-jailable offenses. The plaintiffs argued that taking more than two hours to process and release those individuals made their detention unreasonable in violation of the Fourth Amendment. *Id.* at 703. The Seventh Circuit held that the district court erred in prescribing a two-hour limit to this process, and that plaintiffs would need to show "that any particular detention was excessive." *Id*. In making that determination, the Court would need to examine both the length of a given detention and the reasons why the release was deferred. *Id.*

Here, the Court previously dismissed Plaintiff's initial attempt to certify the class because Plaintiff was unable to distinguish his class from the failed classes in *Harper* and *Portis*. Specifically, the Court found that "[t]he thrust of Plaintiff's claim is that the Sheriff's Office held acquitted detainees for an unreasonable amount of time after their acquittals," and that "most of Plaintiff's allegations focus on the allegedly unreasonable delay in his release, rather than the constitutionality of any specific detention procedures." (R. 52 at 11.) The Court also noted, however, that the Seventh Circuit implicitly left open the possibility for class treatment where

the plaintiff challenges the constitutionality of a particular detention procedure as long as the length of detention is not a central issue in the case. *See Harper*, 581 F.3d at 514.

While Plaintiff's amended proposed class is largely the same as his initial proposed class, he has changed the focus of his claim. In his renewed motion for class certification, Plaintiff presents the following common questions of fact and law that he asserts apply to the unlawful detention claims of both Plaintiff and the proposed class:

> 1. Whether Defendant lacked policies and procedures that acknowledge a male inmate's right to freedom that he acquires by virtue of an acquittal or other favorable disposition of the charges brought against him;
>
> 2. Whether Defendant maintains a policy or practice of detaining male citizens who were found not guilty or otherwise received a judicial determination requiring their release by seizing and handcuffing them, detaining and transporting them in the same holding cells as the other regular inmates, processing them back into the general prison population and continuing to hold them until running a check for outstanding warrants; and
>
> 3. Whether such policies or practices (or lack thereof) are unconstitutional.

(Mot. at 7-8.) Based on these questions, Plaintiff's claim challenges Defendant's alleged restriction of acquitted detainees' right to freedom by treating them in the same manner as regular inmates returning to their cells in the general population of the Cook County Jail. Rather than focus on the length of time of Plaintiff's post-acquittal detention, he now focuses on Defendant's practice of grouping acquitted detainees together with regular inmates, and transporting them to their cells in the jail's general population. Plaintiff's equal protection claim further clarifies his new argument. Plaintiff's equal protection claim is based on his allegation that Defendant segregates similarly situated female acquitted inmates from other inmates and does not return them to their jail cells. Rather, Defendant gives them the option to either remain in a separate receiving room or return to their jail cell while Defendant processes their release. (Am. Compl. at ¶¶ 2, 10.)

Defendant repeatedly acknowledges that it did not treat Plaintiff any differently than any other person who was scheduled to be discharged. (*See*, *e.g.*, R. 60-2, Holmes Dep. Tr. at 10:1-12 (agreeing that "Mr. Otero was treated exactly like any other person who at that time was scheduled to be discharged"); pp. 95:22-96:4 (acknowledging that "all the not guilties are treated also alike because they're in the same group with everybody else who's treated the same without differentiation"); pp. 111:14-17 ("Q: Now, this process I described is without exception applicable to everybody at the end of each day at trial. A: Yes.").) Defendant's alleged practice, therefore, was common as to each member of the class. Thus, the question of the constitutionality of this practice is also common to each class member.

Defendant argues that Plaintiff cannot establish commonality because his claim fails to generate common *answers*, rather than common questions. (R. 80, Def. Resp. at 17.) Defendant asserts that no common answer can exist because the length of time that each class member remained in custody will invariably differ. (*Id.*) In support, Defendant identifies a number of variables – such as computer malfunctions, transportation issues, and the number of detainees on a given day – that can complicate the timing of a detainee's discharge. As stated above, however, Plaintiff's Amended Complaint and motion for class certification do not focus on the length of time that he remained in custody after acquittal.

Defendant also argues that the number of detainees at Cook County Jail suffering from mental illness – approximately 20-30% of the population – defeats Plaintiff's commonality argument. Defendant argues that these detainees require individualized discharges. (*Id*. at 18.) Plaintiff's Amended Complaint and renewed motion for class certification identify a potential common "answer" that would satisfy his proposed class: that Defendant segregate acquitted male detainees from regular inmates following their acquittal. Defendant fails to explain how,

especially at this stage of the litigation, this solution would prevent the individualized attention that some acquitted detainees may require.

In his renewed motion for class certification, Plaintiff has identified at least two factual and legal issues common to the class: whether Defendant maintains a policy or practice of treating acquitted detainees exactly as it does regular inmates until the acquitted detainee is processed back into the general jail population, and whether that policy violates the Fourth and Fourteenth Amendments. Further, Plaintiff presents a potential "answer" or solution that has the potential for class-wide resolution. The Court, therefore, finds that Plaintiff has met his burden with respect to commonality.

**C. Typicality**

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011) (quoting *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). In analyzing the typicality requirement, the Seventh Circuit instructs that "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Id*. Generally, "a claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and is based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (quotations omitted). "Although 'the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiff[] and those of other class members,'" the named plaintiff's claims must share "the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580

F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Defendant asserts that Plaintiff cannot meet the typicality requirement because his class definition is far too broad. (Resp. at 22.) Defendant explains that Plaintiff's proposed class would include "many different categories of detainees that are clearly and certainly distinct from Plaintiff." (*Id*.) As an example, Defendant identifies detainees who have had charges dismissed via a nolle prosequi (nolle pros) or have had charges stricken with leave to reinstate (SOL). Defendant explains that these detainees are in a different position than Plaintiff, or any other detainee who has been acquitted, because they are not final adjudications and they do not preclude a subsequent indictment or reinstatement of charges. Defendant also contends that the proposed definition is too broad because it includes all detainees for whom there has been "a judicial determination requiring their release." As Defendant asserts, this class could include, to name a few examples, (1) detainees whom a judge has ordered to be placed on electronic monitoring; (2) detainees who are to be released to another agency based on a warrant or other hold; (3) detainees who have been found unfit to stand trial and must be remanded to the Illinois Department of Human Services; (4) detainees who have posted bond; and (5) detainees who have been held on a probation violation and have been recommitted to probation. (*Id.* at 8-9, 23-24.)

Plaintiff's proposed class clearly focuses on detainees who have been acquitted or found not guilty. Plaintiff himself obtained a "not guilty" verdict from a jury following his trial. Plaintiff's briefs are replete with references to "acquitted detainees" rather than the broader and amorphous category of those who have received "a judicial determination requiring their release." (*See, e.g.,* Mot. at 1 ("the challenged aspects of Defendant's policy were applied in the same manner to all acquitted male detainees"); 2 ("when a detainee is acquitted in court …"); 3

("citizens who were acquitted that day are not segregated from the other inmates…"); 4 ("the Sheriff's Office has no policies in place that distinguish acquittees from other inmates or that acknowledge their acquittal and right to freedom").) Further, the first "common questions" upon which, Plaintiff asserts, the unlawful detention claims hinge, address a male inmate's "right to freedom that he acquires by virtue of an acquittal or other favorable disposition of the charges brought against him." (Mot. at 6.)

The Court agrees with Defendant, in part, that Plaintiff's proposed class is too broad to satisfy the typicality requirement. The types of detainees who might fall under the category of those for whom there has been "a judicial determination requiring release" includes detainees whose charges have not been dismissed. These detainees with pending criminal charges are not entitled to the same "right to freedom" as an acquitted detainee. The Court, however, disagrees with Defendant regarding detainees who have had charges dismissed by nolle prosequi or have had charges stricken with leave to reinstate. While the principle of double jeopardy does not apply to these types of detainees, the charges brought against them have been dismissed and they are entitled to the same freedom at the time of the dismissal as a detainee who has been acquitted. *See People v. Norris,* 214 Ill.2d 92, 104, 291 Ill. Dec. 629, 824 N.E.2d 205 (2005) ("[W]hen a nolle prosequi is entered before jeopardy attaches, the State is entitled to refile the charges against the defendant"); *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 100, 289 Ill. Dec. 679, 820 N.E. 2d 455 (2004) ("Where a case is stricken with leave to reinstate, the matter remains undisposed of. The same charges continue to lie against the accused, albeit in a dormant state").

The Court, therefore, finds that a modified class that includes only "those detainees who were found not guilty, acquitted, or had the charges brought against them dismissed" satisfies the

typicality requirement. Under this definition, there would be enough congruence between Plaintiff's claim and the class members' claims to allow Plaintiff to litigate on behalf of the group. *See Spano,* 633 F.3d at 586. The class definition may not, however, include the language "or otherwise received a judicial determination requiring their release."

**D. Adequacy of Representation**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir. 1993) (quoting *Sec'y of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir. 1986)(en banc). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id.* (citations omitted).

Defendant does not challenge the adequacy of Plaintiff's counsel, but it does assert that Plaintiff would not be an adequate class representative because his criminal background, which includes multiple felony convictions, presents "serious credibility problems." (Resp. at 25.) Defendant further notes that one of Plaintiff's convictions is for possession of a stolen motor vehicle, which involves dishonesty. Plaintiff argues that both of his prior convictions occurred more than ten years ago when Plaintiff was a teenager. Further, neither conviction relates to the claims brought in Plaintiff's suit. (R. 87, Reply at 8.)

Defendant's argument ignores that the proposed class members are all one-time inmates detained at Cook County Jail. The nature of the suit and of the proposed class means that all class members will at least have been arrested and detained, and some will likely have criminal

records and prior convictions. Defendant has not explained how Plaintiff's criminal history differentiates him from the proposed class members. Further, if convicted felons could not serve as adequate class representatives, "there would be no such thing as a class action in the prison or jail context." *Parish v. Sheriff of Cook County*, 07 C 4369, 2008 WL 4812875 at *5 (N.D. Ill. 2008).

Defendant also challenges Plaintiff's adequacy as a class representative on the basis that there are too many divergent categories of class members, but the Court has already addressed this argument in the typicality analysis. Ultimately, the Court finds that there is no basis to hold that Plaintiff and his counsel will not fairly and adequately protect the interests of the protected class.

## II. Rule 23(b)(3)

### A. Predominance and Superiority

A court may certify a Rule 23(b)(3) class where "questions of law and fact common to members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently resolving the dispute in question." Fed. R. Civ. P. 23(b)(3). Predominance is similar to commonality but requires a "far more demanding" inquiry. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); *Messner*, 669 F.3d at 814. In broad terms, predominance requires that the "legal or factual questions that qualify each class member's case as a genuine controversy" are "sufficiently cohesive to warrant adjudication by representation." *Messner*, 669 F.3d at 814 (quoting *Amchem*, 521 U.S. at 623). It requires more than simply "counting noses" – *i.e.*, "determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir.

2014). Instead, predominance requires a qualitative decision regarding whether "common questions represent a significant aspect of [a] case and … can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815.

Defendant makes a number of arguments explaining why Plaintiff fails to meet the predominance requirement. None are persuasive. Defendant argues that the large and diverse number of categories to which individual detainees could belong defeat the predominance of any one issue. The Court has already modified the class definition to address this concern. Plaintiff challenges what he alleges is a policy and practice that applies to all Cook County Jail detainees, who are found not guilty, acquitted, or otherwise have the charges against them dismissed. The predominant issue in this litigation will be the existence and constitutionality of that alleged practice.

Defendant argues that it will be impossible for the Court to separate the time it takes to discharge a detainee from Plaintiff's claims, and that the Court will have to analyze individually each detainee's discharge. Defendant, however, seems to concede that it applies this practice to all detainees equally. Given the modified class definition, there will be no need to distinguish each detainee's discharge. Defendant suggests that the proposed class members' damages claims will vary on an individual basis and that this variance overwhelms any common issue. But Plaintiff is not required to establish common proof of damages for class members. *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014). Indeed, "[i]t is very common for Rule 23(b)(3) class actions to involve differing damage awards for different class members." *De La Fuente*, 713 F.2d at 233. Defendant also argues, in seeming contrast to its "time" argument, that Plaintiff's detention claim remains the same, and that he has simply removed the time allegation. Plaintiff's removal of the time allegation from the detention

claim shifts the focus of the claim away from the length of the post-acquittal detention, to Defendant's practice of treating acquitted detainees no differently than regular inmates until they return to their cells. Plaintiff's allegations now focus on a specific detention procedure, rather than the length of detention. Defendant's argument also ignores Plaintiff's new equal protection claim, which provides context to Plaintiff's detention claim because it identifies the alternative release procedure that Plaintiff believes should apply to male detainees.

A class action is the superior procedure for litigating these claims because the Court can determine the legality of the alleged practice and procedure in one proceeding. The proposed class might include hundreds, if not thousands of members, many of whom are unlikely to pursue their claims on their own. Even if damages vary among class members, the Court may hold separate liability and damages trials or appoint a magistrate judge to preside over individual damages proceedings. *Butler*,727 F.3d at 798; *see also Arreola*, 546 F.3d at 801.

## CONCLUSION

For these reasons, the Court grants Plaintiff's motion for class certification. The Court certifies the following class under Rule 23(b)(3):

> All male inmates who while being detained by the Cook County Sheriff's Office were found not guilty, were acquitted, or had charges brought against them dismissed, and for whom the Sheriff's Office no longer had any legal right to detain from April 27, 2010 through the present.

The Court designates Plaintiff Brian Otero as the class representative and appoints Myron M. Cherry and Jacie C. Zolna of Myron M. Cherry & Associates, LLC and Robert M. Foote of Foote, Mielke, Chavez & O'Neil, LLC as class counsel.

**DATED: September 2, 2014**

**ENTERED**

AMY J. ST. EVE
U.S. District Court Judge