**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

BRIAN OTERO, individually, and            )
on behalf of a class of similarly situated  )
individuals,                              )
                                          )
             Plaintiff,                   )        Case No. 12 C 3148
                                          )
        v.                                )
                                          )
THOMAS J. DART, Sheriff of Cook           )
County and COOK COUNTY, ILLINOIS,[1]      )
                                          )
             Defendants.                  )

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On January 15, 2014, Plaintiff Brian Otero, individually and on behalf of a class of

similarly situated individuals, filed an Amended Complaint against Defendants Cook County

Sheriff Thomas J. Dart, in his official capacity, and Cook County, Illinois alleging violations of

his constitutional rights based on his post-acquittal detention at the Cook County Jail ("CCJ"),

which is administered by the Cook County Department of Corrections ("CCDOC") as part of the

Cook County Sheriff's Office.[2] *See* 42 U.S.C. § 1983. Before the Court is Plaintiff's motion for

partial summary judgment and Defendant Dart's motion for summary judgment brought pursuant

---

[1] Plaintiff joined Cook County as a Defendant in this action because state law requires
the County to pay judgments entered against the Sheriff in his official capacity. *See Askew v.
Sheriff of Cook Cnty.,* 568 F.3d 632, 636 (7th Cir. 2009); *Carver v. Sheriff of LaSalle Cnty.,* 324
F.3d 947, 948 (7th Cir. 2003); 55 ILCS 5/5–1002.

[2] Under Illinois' County Jail Act, "[t]he Sheriff of each county in this State shall be the
warden of the jail of the county, and have the custody of all prisoners in the jail, except when
otherwise provided in the "County Department of Corrections Act." 730 ILCS 125/2; *see also
Moy v. County of Cook,* 159 Ill. 2d 519, 526, 203 Ill.Dec. 776, 640 N.E.2d 926 (1994).

to Federal Rule of Civil Procedure 56(a) and Northern District of Illinois Local Rule 56.1. For the following reasons, the Court grants Defendant's motion for summary judgment in regard to Plaintiff's claim based on the Fourteenth Amendment's procedural due process protections, but denies the remainder of Defendant's motion. The Court also denies Plaintiff's motion for partial summary judgment.

## BACKGROUND

### I.     Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement ... of any additional facts that require the denial of summary judgment.'" *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (citation omitted).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [ ] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). Moreover, "[e]vidence supporting or opposing summary judgment must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Widmar v. Sun Chem. Corp.,* 772 F.3d 457, 460 (7th Cir. 2014).

The parties challenge many of each other's Rule 56.1 Statements of Facts and Statements of Additional Facts as not abiding by the Local Rules. The Court will consider these objections within each statement and follow the Local Rule's parameters as discussed immediately above.

## II. Relevant Facts

### A. Procedural Background

On April 27, 2012, Plaintiff filed his original class action Complaint alleging that Defendant Dart has a "policy or practice of unlawfully detaining, holding in custody or imprisoning free citizens following a trial or other proceeding at which the citizen is found not-guilty or otherwise acquitted." (R. 1, Compl. ¶¶ 1, 36.) Plaintiff alleged that this policy or practice was unreasonable in length and manner. (*Id*. ¶ 32.) After the Court granted in part and denied in part Defendant's motion to dismiss in October 2012, Plaintiff filed his first motion for

class certification pursuant to Rule 23(b)(3) on July 23, 2013. Because Plaintiff's theory of liability was based on the length of his post-acquittal detention, the Court denied Plaintiff's motion for class certification on December 20, 2013 under well-established Seventh Circuit case law. *See Portis v. City of Chicago*, 613 F.3d 702, 705 (7th Cir. 2010); *Harper v. Sheriff of Cook Cnty.,* 581 F.3d 511, 514-15 (7th Cir. 2009). More specifically, "the Court denied Plaintiff's motion with prejudice to the extent that he sought to certify the class based on the alleged unreasonableness of the delay in releasing acquitted detainees from Cook County Jail, and without prejudice to the extent he sought to certify a class challenging one or more specific detention procedures applied to acquitted detainees." *Otero v. Dart,* 306 F.R.D. 197, 200 (N.D. Ill. 2014).

On January 15, 2014, Plaintiff filed his Amended Complaint alleging that Defendant Dart "maintains a policy or practice of detaining, holding in custody and imprisoning male inmates in an unreasonable manner with deliberate indifference to their constitutional rights following a trial or other court appearance where the individual is found not guilty, is acquitted, obtains a dismissal of the charges brought against him or otherwise receives a judicial determination requiring his release." (R. 56, Am. Compl. ¶ 27.) In addition, Plaintiff alleges that Defendant "treats male inmates differently than similarly situated female inmates who were found not guilty, were acquitted, obtained a dismissal of the charges brought against them or otherwise received a judicial determination requiring their release." (*Id.* ¶ 38.) Plaintiff bases his claims on the Fourth Amendment, the Fourteenth Amendment's substantive and procedural due process protections, and the Fourteenth Amendment's Equal Protection Clause.

Plaintiff then filed his renewed motion for class certification on January 30, 2014 changing the focus of his claims. Rather than relying on the length of his post-acquittal detention, Plaintiff readjusted his claim to focus on Defendant's practice of placing acquitted detainees with regular detainees and transporting them from court back to their cells in CCJ's general population. *See Otero,* 306 F.R.D. at 204. Based on Plaintiff's fine-tuning of his claim, the Court granted Plaintiff's motion for certification and certified the following class under Rule 23(b)(3):

> All male inmates who while being detained by the Cook County Sheriff's Office were found not guilty, were acquitted, or had charges brought against them dismissed, and for whom the Sheriff's Office no longer had any legal right to detain from April 27, 2010 through the present.

*Otero*, 306 F.R.D. at 208.

### B.     Cook County Jail and Cook County Department of Corrections

The CCJ is one of the largest jail systems in the United States and is situated on a 96-acre site at 26th Street and California Avenue in Chicago, Illinois. (R. 185, Def.'s Rule 56.1 Stmt. Facts ¶ 15; R. 198, Pl.'s Stmt. Add'l Facts ¶ 1; R. 182, Pl.'s Rule 56.1 Stmt. Facts ¶ 4.)[3] There are fourteen courthouses in Cook County, including the criminal courthouse located at 26th Street and California Avenue in Chicago. (Pl.'s Stmt. Facts ¶ 9.) Representatives from the Sheriff's Office estimate that staff transports approximately 800 to 1,000 CCJ detainees to and from the numerous Cook County courthouses to the CCJ on any given day. (*Id*. ¶ 12.) The

---

[3] Defendant objects to Plaintiff's reliance on Defendant's own website, namely, www.cookcountysheriff.org, arguing that Plaintiff has failed to lay a proper foundation to authenticate this information. In general, records from government websites are self-authenticating. *See SEC v. Berrettini,* No. 10 CV 1614, 2015 WL 5159746, at *6 (N.D. Ill. Sept. 1, 2015).

CCDOC's General Order 9.27, dated October 15, 1995, provides a framework for detainee discharge procedures. (*Id.* ¶ 56.)

## C. Defendant's Policies and Practices

When a detainee is admitted to or discharged from the CCJ – whether he is being initially admitted, ultimately discharged, or is traveling to and from court – the Sheriff's Office processes him through the Reception Classification Diagnosis Center ("RCDC"). (Def.'s Stmt. Facts ¶¶ 15, 28; Pl.'s Stmt. Facts ¶ 23.) The RCDC operates in three buildings, including the basement of Division V, the newly constructed RCDC building, and the "bridge" or basement level of the criminal courts building at 26th and California. (Pl.'s Stmt. Facts ¶ 25.) The RCDC staff uses the various holding cells in the RCDC throughout the day for different and varying purposes. (*Id.* ¶ 24.)

Officers take detainees going from the CCJ to the criminal courthouse at 26th and California through a bridge in the criminal courts building. (*Id.* ¶ 26.) The RCDC staff at the bridge segregates the detainees into holding cells by courtroom location so the courtroom deputies can retrieve and transport the detainees to their court appearances. (*Id.*) When staff members transport detainees from the bridge to the courtrooms, they separate the detainees based on whether they are going to the north or south side of the courtroom building and by courtroom floor. (*Id.* ¶ 27.) Immediately before and after their court appearances, detainees are held in the holding cells located behind the courtrooms. (*Id.* ¶ 28.)

After their court appearances, staff members transport the male detainees – whether they have had a judicial determination of discharge or not – to a holding area in the bridge of the criminal courthouse. (*Id.* ¶ 49.) The bridge consists of eight holding cells (also known as

"bullpens") that hold about 50 detainees at any given time. (*Id.* ¶ 50.) Thereafter, Sheriff's Office personnel transport the male acquittees along with other male detainees from the bridge through the tunnel, and, ultimately, to the RCDC where an officer locks them up together in another bullpen. (*Id.* ¶ 51; Def.'s Stmt. Facts ¶ 19.) When transporting detainees from the bridge, officers segregate the maximum security detainees and the increased maximum security detainees from the other detainees. (Pl.'s Stmt. Facts ¶ 52; Def.'s Stmt. Facts ¶ 38.) The staff then transports the remainder of the detainees in groups that could be anywhere from 10 to 100 detainees depending on volume and staffing levels. (Pl.'s Stmt. Facts ¶ 52.) After staff members place the male detainees in the RCDC holding cells, a transportation unit takes them back to their respective living units within the CCJ. (*Id.* ¶ 53.)

Once male acquittees – who have had a judicial determination of discharge – are back in their living unit, the Records Division conducts its review of the court orders ("mittimuses") and creates a discharge packet. (*Id.* ¶¶ 55, 58; Def.'s Stmt. Facts ¶¶ 49, 51.) A Records Division supervisor then reviews and approves the discharge packet, after which he or she sends the packet to the RCDC for staff review. (Def.'s Stmt. Facts ¶ 67.) When the packet is returned to the Records Division supervisor after the RCDC review, the supervisor conducts the final review of the discharge packet. (*Id.*) An officer in the Discharge Unit then conducts an exit interview of the detainee. (*Id.* ¶ 68.) When the detainee is ready for discharge, staff transport him to Division V where CCDOC officials conduct a final check. (*Id.* ¶¶ 69, 70.)

With respect to female detainees who are found not guilty or otherwise acquitted in court, a Sheriff's officer conducts a pre-screening of the mittimuses to determine whether the female detainee is a potential candidate for release. (Pl.'s Stmt. Facts ¶ 61; R. 201, Def.'s Rule 56.1

Stmt. Add'l Facts ¶ 13.)  If the mittimus indicates a disposition of the female's charges, an officer then checks the jail management computer system to determine whether there are other pending cases, warrants, or holds.  (Pl.'s Stmt. Facts ¶ 63.)  It only takes a few moments to look at a mittimus to determine whether an individual is a potential candidate for release.  (*Id*. ¶ 65.)  Once the jail staff is aware of a female detainee's favorable disposition, the staff member commences the final review and release process for her.  (*Id*. ¶ 66.)  When the staff identifies a potential female release candidate through the pre-screening process, they give her the option of remaining in the RCDC pending the Records Division's final review of her file.  (*Id*. ¶ 68; Def.'s Stmt. Add'l Facts ¶ 16.)  A Sheriff's Office employee then segregates the female detainees who choose to remain in the RCDC to hold them separately from other detainees.  (Pl.'s Stmt. Facts ¶ 71; Def.'s Stmt. Facts ¶ 82.)  Also, if a female detainee elects to remain in the RCDC, a staff member places a call to her jail division so that an officer assigned to her former living unit can collect her personal belongings.  (Pl.'s Stmt. Facts ¶ 73.)

> ### D.     Plaintiff's Detention

Plaintiff Brian Otero was incarcerated at the CCJ following an arrest for burglary on November 24, 2009.  (Def.'s Stmt. Facts ¶ 6.)  Almost one and a half years later, on July 21, 2011, a jury returned a not guilty verdict as to Plaintiff on the burglary charge.  (*Id*. ¶ 7.)  The Cook County States Attorney tried Plaintiff with his brother for the burglary at the same time, but the jury returned a guilty verdict as to Plaintiff's brother.  (*Id.* ¶ 8.)  Following the jury verdict, staff took Plaintiff to a holding pen in Division V with other detainees at which time the other detainees overheard a conversation that the jury found Plaintiff not guilty.  (*Id*. ¶ 9.)  Three unknown detainees then attacked Plaintiff causing him injury when he was in the Division V

holding cell on his way back from court.  (*Id.* ¶ 10.)  Thereafter, personnel transferred Plaintiff

back to his living unit, namely, Division VI of the CCJ.  (*Id.* ¶ 13.)  After the discharge

paperwork was completed, but before his release, staff returned Plaintiff to a holding cell in

Division V.  (R. 185-2, Def.'s Ex. 2, Otero Dep., at 49-50.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Life Plans, Inc. v. Security

Life of Denver Ins. Co.,* 800 F.3d 343, 349 (7th Cir. 2015).  In determining summary judgment

motions, "facts must be viewed in the light most favorable to the nonmoving party only if there

is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167

L.Ed.2d 686 (2007).  The party seeking summary judgment has the burden of establishing that

there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317,

323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  After "a properly supported motion for summary

judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).  "To survive summary

judgment, the non-moving party must show evidence sufficient to establish every element that is

essential to its claim and for which it will bear the burden of proof at trial." *Life Plans, Inc.*, 800

F.3d at 349.

# ANALYSIS

## I.      Overdetention Claim – Count I

In Count I of the Amended Complaint, Plaintiff alleges that Defendant's policies and practices deprived him of his Fourth and Fourteenth Amendment rights.  Plaintiff seeks to hold Sheriff Dart liable under § 1983 because he is a lawmaker whose "edicts or acts may fairly be said to represent official policy."  *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  As discussed in the Court's September 2, 2014 class certification ruling, "Plaintiff's claim challenges Defendant's alleged restriction of acquitted detainees' right to freedom by treating them in the same manner as regular inmates returning to their cells in the general population of the Cook County Jail."  *Otero,* 306 F.R.D. at 204.  More specifically, Plaintiff contends that the Sheriff's Office has no policies in place that distinguish male acquittees from other detainees.[4]  In Count I, Plaintiff brings his overdetention claim pursuant to the Fourteenth Amendment's substantive and procedural due process protections, as well as the Fourth Amendment's prohibition against unreasonable seizures.  Defendant Dart moves for summary judgment regarding Plaintiff's overdetention claim as alleged in Count I of the Amended Complaint.

### A.      Fourth Amendment and Substantive Due Process

#### 1.      Fourth Amendment

The Court first examines Defendant's argument that the Fourteenth Amendment applies under the circumstances and not the Fourth Amendment's protections against unreasonable

---

[4]  Although the certified class includes individuals who had judicial determinations of discharge other than acquittal, for the sake of clarity, the Court refers to the class and policy as involving post-acquittal detainees.

searches and seizure. Defendant specifically argues that Fourth Amendment protections only apply to detainees during the period of confinement between their arrest and the judicial determination of probable cause. *See Ortiz v. City of Chicago,* 656 F.3d 523, 530 (7th Cir. 2011); *Lopez v. City of Chicago,* 464 F.3d 711, 719 (7th Cir. 2006). Plaintiff's claim, however, is based on his post-acquittal confinement, and thus he was "a free citizen protected by the Fourth Amendment." *Shultz v. Dart,* No. 13 C 3641, 2013 WL 5873325, at *4 (N.D. Ill. Oct. 31, 2013) (after defendant "was sentenced to time served and told by the judge that he was free to leave, he once again became a free person and thus protected by the Fourth Amendment."); *see also Smith v. Dart,* No. 13 C 8223, 2015 WL 1727341, at *2 (N.D. Ill. Apr. 13, 2015) ("after he was acquitted, plaintiff was no longer in custody pursuant to legal process, the touchstone of Fourteenth Amendment protection."); *cf. Lewis v. O'Grady,* 853 F.2d 1366, 1372 (7th Cir. 1988) (delay in "releasing an individual from custody could violate his fourth amendment rights").[5]

The Court therefore turns to Plaintiff's argument that he has presented sufficient evidence creating an issue of material fact for trial that Defendant's policy is unreasonable in violation of the Fourth Amendment. "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In assessing the reasonableness of Defendant's policy, the Court

---

[5] Defendant relies on *Lewis v. O'Grady,* 853 F.2d 1366, 1370 (7th Cir. 1988), for the proposition that retaining custody over a detainee while tending to pre-release administrative tasks is not per se unconstitutional, which is an accurate statement of law. Nevertheless, relying on case law discussing the Fourth Amendment, the *Lewis* decision reversed the district court's directed verdict and remanded the case to allow a jury to determine whether the length of the detainee's detention was reasonable under the circumstances. *See id.* at 1367 (citing *Gramenos v. Jewel Co., Inc.,* 797 F.2d 432, 437 (7th Cir. 1986), and *Moore v. Marketplace,* 754 F.2d 1336, 1351 (7th Cir. 1985)).

examines "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Fourth Amendment reasonableness standard is inherently fact dependent. *See Williams v. Indiana State Police Dep't,* 797 F.3d 468, 472 (7th Cir. 2015).

Plaintiff's argument that Defendant's overdetention policy is unreasonable rests on Defendant's lack of policy for pre-screening acquitted male detainees for release and failure to segregate them from the general population after they return from court – like Defendant's policy for acquitted female detainees. Due to this lack of policy, Plaintiff argues that the nature and quality of his continued detention after acquittal was burdensome and unacceptably dangerous, especially because Defendant no longer had any legal right to detain him. Plaintiff has presented evidence in the form of the expert opinion of Jeffrey Schwartz, Ph.D. – that Defendant does not challenge under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) – raising an issue of fact for trial that Defendant's lack of policy subjects acquitted male detainees to unreasonable risks of violence from other detainees and unreasonable risks of the jail staff's use of force. Plaintiff's evidence concerning the general risk of violence at the CCJ is also supported by the testimony of Defendant's Rule 30(b)(6) witness and the RCDC's Superintendent. (Pl.'s Stmt. Facts ¶¶ 16, 17.)

On the other hand, examining the facts and all reasonable inferences in Plaintiff's favor, Defendant has failed to present sufficient evidence to establish – as a matter of law – that countervailing governmental interests outweigh Plaintiff's right to be released as a free man.

Defendant, for example, suggests that it is necessary to process acquitted male detainees under the present procedures due to volume and space constraints at the CCJ. As far as space is concerned, there is evidence in the record that even during some of the busier times at the RCDC, there are several unused male holding cells available, as well as additional unused space on the first floor of Division V. (Pl.'s Stmt. Facts ¶¶ 87-89.) Equally important, Defendant's argument does not directly address why jail staff does not segregate male detainees with court-ordered discharges from the other male detainees, especially because evidence in the record creates a triable issue of fact that this category of detainees is a fraction of the detainees returning from the Cook County criminal courthouses on any given day and that it only takes a few seconds to verify a mittimus to determine whether an individual is a potential candidate for release. (Pl.'s Stmt. Facts ¶¶ 12, 52, 65.) Furthermore, Plaintiff has presented evidence that the Sheriff's Office has the resources to segregate acquitted female detainees, as well as detainees with "new bonds," namely, individuals who have been in court, remanded to the Sheriff's custody, and are waiting for someone to post their bond. (*Id*. ¶ 37; 209-1, Johnsen Dep., at 26-28.)

In further support of the argument that countervailing governmental interests justify his post-acquittal detention policy, Defendant Dart presents evidence and argues that the CCDOC's discharge procedures are acceptable by highlighting different factors that may cause reasonable delays. Defendant, for example, points to traffic concerns when transporting detainees from the many Cook County courthouses back to the CCJ, completing and processing paperwork, and processing new detainees. (Def.'s Stmt. Facts ¶¶ 21-26, 30, 45-46, 59.) Defendant also argues that the staff must conduct a complete review of an acquitted detainee's paperwork, including

searching for outstanding warrants or holds.  (*Id.* ¶¶ 54-58, 60-61, 63-68.)  In response, Plaintiff does not dispute that CCDOC personnel must process the necessary paperwork, verify court orders, and check for outstanding warrants before releasing detainees – especially because the question of delay or length of time concerning Plaintiff's overdetention is not at issue in this lawsuit.  Indeed, in relation to these routine delays, Plaintiff explains that he "does not dispute that such burdens and delays exist.  They do.  But they can and would be avoided altogether if males were treated the same as females and allowed to remain outside of the general population pending their release."  (R. 200, Pl.'s Resp. Brief, at 17.)  Thus, Defendant's argument based on the reasonableness of the delay in releasing acquitted detainees is unavailing.

Accordingly, viewing the evidence and all reasonable inferences in Plaintiff's favor – as the Court is required to do at this procedural posture – he has presented sufficient evidence creating a genuine issue of material fact for trial that Defendant's overdetention policy is unreasonable under the Fourth Amendment.  The Court thus denies Defendant's summary judgment motion in this respect.

## 2.      Substantive Due Process

The Court recognizes that if an action falls squarely within the Fourth Amendment's protections, such as an excessive force claim, substantive due process would not govern that claim.  *See Graham,* 490 U.S. at 395 ("where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.").  Because Defendant argues that the present claim does not fall "within the ambit of those activities regulated by the Fourth Amendment" – and Plaintiff asserts a

substantive due process claim in the alternative – the Court also considers Plaintiff's claim under the Fourteenth Amendment's substantive due process protections for the sake of completeness. *See Belcher v. Norton,* 497 F.3d 742, 754 (7th Cir. 2007); *see also Villanova v. Abrams,* 972 F.2d 792, 797 (7th Cir. 1992) ("Does the distinction between the two legal categories (search and seizure, and due process) make any practical difference?  Probably not, since whether the issue [of continued confinement] is addressed under the Fourth Amendment or under the due process clause, the benefits of confinement to the government must be compared with the costs to the person confined.").

"The touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974), "whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective."  *County of Sacramento v. Lewis,* 523 U.S. 833, 845-46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (internal citations omitted).  "[T]o determine whether due process requirements apply in the first place" courts "must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property."  *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 570-71, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

Here, Plaintiff has "a liberty interest in being free from incarceration absent a criminal conviction."  *Oviatt By & Through Waugh v. Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992); *see also Slone v. Herman,* 983 F.2d 107, 110 (8th Cir. 1993) (once order "suspending [inmate's] sentence became final and nonappealable, the state lost its lawful authority to hold [inmate]"); *Shultz*, 2013 WL 5873325, at *5 ("The substantive component of the Fourteenth Amendment's

due process guarantee recognizes that the detention of an individual without legal authority may constitute a deprivation of liberty.")  Because Plaintiff has fulfilled this threshold requirement, the Court turns to his substantive due process claim.

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'"  *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (citation omitted).  "In the context of substantive due process, the inquiry involves 'an appraisal of the totality of the circumstances rather than a formalistic examination of fixed elements.'"  *Holloway v. Delaware Cnty. Sheriff,* 700 F.3d 1063, 1069 (7th Cir. 2012) (quoting *Armstrong v. Squadrito,* 152 F.3d 564, 570 (7th Cir. 1998)).  In his summary judgment motion, Defendant Dart argues that Plaintiff has failed to show that the totality of the Sheriff Office's "actions rise to the level of shocking the conscience that is required for a Fourteenth Amendment due process violation to have occurred."  (R. 186, Def.'s Opening Brief, at 17.)  To clarify, "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'"  *Lewis,* 523 U.S. at 847 (quotation omitted).

In examining the "shocks the conscience" standard under the Supreme Court's *Lewis* decision, the Seventh Circuit explained that "less horrible conduct also violates substantive due process."  *Armstrong,* 152 F.3d at 576.  The *Armstrong* decision clarified that "the Court endorsed the use of the deliberately indifferent standard for cases in which the defendants have the luxury of forethought" explaining "that prison is the quintessential setting for the deliberately indifferent standard because 'in the custodial situation of a prison, forethought about an inmate's

welfare is not only feasible but obligatory.'" *Armstrong,* 152 F.3d at 576 (quoting *Lewis*, 523

U.S. at 851). The Seventh Circuit thus concluded that "[i]f any doubt remained about whether

deliberate indifference could shock the conscience, the [*Lewis*] Court summed up with: 'When

such extended opportunities to do better are teamed with protracted failure even to care,

indifference is truly shocking.'" *Id.* at 577 (quoting *Lewis*, 523 U.S. at 853). In other words,

"when the circumstances permit public officials the opportunity for reasoned deliberation in their

decisions, [courts] shall find the official's conduct conscience shocking when it evinces a

deliberate indifference to the rights of the individual." *King ex rel. King v. E. St. Louis Sch. Dist.*

*189,* 496 F.3d 812, 819 (7th Cir. 2007); *see also Christensen v. County of Boone, Ill.,* 483 F.3d

454, 468 (7th Cir. 2007) ("it is often important to differentiate between situations in which the

state actor is acting under exigent circumstances and those situations in which the state actor is

working at a more deliberate pace.").

      In response to Defendant's summary judgment motion, Plaintiff asserts that his claim is

based on Defendant's policy and practice that restricts acquitted detainees' right to freedom by

treating them in the same manner as regular detainees returning from court, which is based on a

deliberative policy as opposed to any exigent circumstances. The Court agrees and applies the

deliberate indifference standard to Plaintiff's claim. Under the Fourteenth Amendment's

substantive due process protections, the Seventh Circuit defines "deliberate indifference as

'conscious disregard of known or obvious dangers.'" *Armstrong*, 152 F.3d at 577 (citation

omitted). Put differently, "the defendant must have known that the plaintiff 'was at serious risk

of being harmed [and] decided not to do anything to prevent that harm from occurring even

though he could have easily done so.'" *Id.* (citation omitted); *see also Board v. Farnham,* 394

F.3d 469, 478 (7th Cir. 2005).  The Court also notes that it is well-settled that jail officials have a duty to protect detainees from violent assaults at the hands of fellow detainees pursuant to the Fourteenth Amendment.  *See Klebanowski v. Sheahan,* 540 F.3d 633, 637 (7th Cir. 2008) (citing *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Plaintiff has presented evidence that detainees have filed lawsuits against Defendant Dart and his predecessors regarding unsafe conditions due to the commingling of detainees of different classifications, as well as in the specific context of overdetention, yet the Sheriff's Office has not altered its policies or General Order 9.27, which was promulgated twenty years ago.  Further, Plaintiff has presented Dr. Schwartz's expert opinion that Defendant is and was on notice that the CCJ is a dangerous place and that placing acquitted detainees among other detainees increases their risk of harm based on the pervasive pattern of assaults when detainees of different classifications are commingled.  This evidence creates a triable issue of fact that the Sheriff's Office was aware of a substantial risk of harm to Plaintiff, yet did not take steps to protect him from this danger.

Defendant Dart, on the other hand, argues that the Seventh Circuit's decision in *Smith v. Sangamon County Sheriff's Dep't,* 715 F.3d 188 (7th Cir. 2013), forecloses Plaintiff's claim.  In *Smith,* a detainee based his Fourteenth Amendment deliberate indifference due process claim on the Sheriff's security classifications arguing that this policy did not do enough to separate violent from nonviolent detainees within the jail.  *See id.* at 191.  The Seventh Circuit rejected the plaintiff's claim because he failed to present any evidence that the classification policy created a serious risk of physical harm to the detainees.  *See id.* at 192.  As discussed above, Plaintiff has presented sufficient evidence creating a triable issue of fact to survive Defendant Dart's

summary judgment motion in this respect.

Next, relying on the deposition testimony of the RCDC's Superintendent, Defendant argues that returning acquitted detainees to their housing unit is a safer course of action than holding detainees in bullpens or holding cells. This argument does not establish – as a matter of law – that Defendant did not act with deliberate indifference based on Defendant's failure to separate acquittees while holding them in the various bullpens before returning the detainees to their housing units. In fact, the RCDC's Superintendent testified that holding detainees collectively for long periods of time in bullpens creates tension. (R. 208-1, Johnsen Dep., at 163.)

Defendant further attempts to ameliorate any showing of deliberate indifference by setting forth evidence that the Sheriff's Office "has implemented several measures over the last few years to reduce the number of total hours it takes to process a detainee and to improve the accuracy and efficiency of the discharge process." (Def.'s Opening Brief, at 26.) Again, Defendant's argument focuses on the timing of the acquitted detainees release and not the risk of harm resulting from commingling detainees in holding pens and returning them to their housing units.

Examining the facts and all reasonable inferences in Plaintiff's favor, Plaintiff has presented sufficient evidence creating a triable issue of fact that Defendant acted with deliberate indifference under the circumstances. The Court therefore denies Defendant's summary judgment motion concerning Plaintiff's Fourteenth Amendment substantive due process claim.

## B.     Procedural Due Process

Plaintiff also brings his overdetention claim under the Fourteenth Amendment's procedural due process protections.  In evaluating procedural due process claims, courts engage in a two-step analysis:  (1) whether the plaintiff was deprived of a protected liberty or property interest and (2) what type of process was due.  *See Hinkle v. White,* 793 F.3d 764, 767 (7th Cir. 2015).  Because Plaintiff has a protected liberty interest to be free from incarceration absent a criminal conviction, the Court examines what process Plaintiff was due under the circumstances. "Generally, due process requires some kind of hearing before the State deprives a person of liberty or property," although, "in some circumstances [] a postdeprivation hearing or a common-law-tort remedy satisfies due process." *Tucker v. Williams*, 682 F.3d 654, 660 (7th Cir. 2012) (citations omitted).

In support of his summary judgment motion, Defendant Dart argues that pursuant to *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the common law tort of false imprisonment provides an adequate post-deprivation procedural safeguard under the circumstances.[6]  *See Schepers v. Commissioner of Ind. Dep't of Corr.,* 691 F.3d 909, 916 (7th Cir. 2012) ("in some circumstances, a deprivation of liberty or property might be the result of a 'random and unauthorized' act by a state official, and the aggrieved person is thus relegated to post-deprivation remedies such as state tort actions.").  In *Parratt*, the Supreme Court "held that a claim based on the due process clause of the Fourteenth Amendment is not actionable if the alleged violation was the unauthorized act of a rogue state officer rather than an application of

---

[6]  The *Parratt* doctrine does not apply to substantive due process claims.  *See Armstrong v. Daily,* 786 F.3d 529, 539-40 (7th Cir. 2015); *Belcher v. Norton,* 497 F.3d 742, 750 (7th Cir. 2007); *Pena v. Mattox,* 84 F.3d 894, 897 (7th Cir. 1996).

state law or policy, as long as the state provides an adequate remedy for the wrongful act of its employee." *Llovet v. City of Chicago,* 761 F.3d 759, 761 (7th Cir. 2014); *see also Armstrong,* 786 F.3d at 539 ("*Parratt* is limited to a narrow category of due process cases where the plaintiff claims he was denied a meaningful pre-deprivation hearing, but under circumstances where the very notion of a pre-deprivation hearing would be impractical and even nonsensical, and where the deprivation was not carried out through established state procedures."). Because Plaintiff's claim is based on Defendant's policies and practices, the *Parratt* doctrine does not apply, and thus Defendant's argument is without merit. *See Schepers,* 691 F.3d at 916 (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)); *see, e.g., Smith,* 2015 WL 1727341, at *3 ("plaintiff is not complaining that state actors deviated, through inadvertence or design, from a permissible state procedure," instead, "he attacks the procedure itself as unconstitutional, which is an actionable due process claim.").

Turning to what process was due under the circumstances, the Court recognizes that "[d]ue process requires government to follow reasonable procedures for minimizing mistaken deprivations of liberty." *Atkins v. City of Chicago,* 631 F.3d 823, 827 (7th Cir. 2011). "While the requirements of due process vary with the particulars of the proceeding, it is well-established that the essential requirements of due process are notice and an opportunity to be heard." *Tom Beu Xiong v. Fischer,* 787 F.3d 389, 400 (7th Cir. 2015). "The purpose of notice under the Due Process Clause is to allow an interested party to challenge the deprivation of a protected liberty interest before it occurs" and the "case law involving what type of notice is required under the Due Process Clause is numerous, and its applicability wide-spread." *Matamoros v. Grams,* 706 F.3d 783, 790 (7th Cir. 2013). "The amount and timing of the process due when a deprivation of

liberty or property (in the constitutional sense of these terms) is alleged varies with circumstances." *Chicago United Indus., Ltd. v. City of Chicago,* 445 F.3d 940, 944 (7th Cir. 2006).

In his response brief, Plaintiff does not explain what type of notice was required or the nature of the process he was due under the circumstances – nor has Plaintiff cited legal authority lending guidance to this question. After careful research, the Court has not found any legal authority concerning what pre-deprivation process would be appropriate for Plaintiff's overdetention claim – most likely because the protections under substantive due process are a better fit under the circumstances. *See Barnes v. D.C.,* 793 F. Supp. 2d 260, 274-75 n.11 (D.D.C. 2011); *see, e.g., Shultz*, 2013 WL 5873325, at *5. To clarify, Plaintiff's claim essentially rests on the premise that no matter how much process Defendant could or would provide, the substantive component of due process bars Defendant from unreasonably detaining him after his acquittal. *See Wudtke v. Davel,* 128 F.3d 1057, 1062 (7th Cir. 1997) (discussing difference between substantive and procedural due process); *see also Zinermon,* 494 U.S. at 125 (procedural due process is "a guarantee of fair procedure").

In sum, construing the evidence and all reasonable inferences in Plaintiff's favor, he has failed to submit evidence to establish every element that is essential to his procedural due process claim for which he will bear the burden of proof at trial. *See Life Plans, Inc.*, 800 F.3d at 349. As such, the Court grants Defendant's motion regarding Plaintiff's procedural due process claim.

**II.    Equal Protection Claim – Count II**

In Count II of his Amended Complaint, Plaintiff alleges that Defendant's overdetention policy discriminates against acquitted male detainees based on gender.  Both Plaintiff and Defendant move for summary judgment as to Plaintiff's Equal Protection claim.  "The Equal Protection Clause grants to all Americans the 'right to be free from invidious discrimination in statutory classifications and other governmental activity.'"  *D.S. v. E. Porter Cnty. Sch. Corp.,* 799 F.3d 793, 799 (7th Cir. 2015) (quoting *Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980)).  "Gender is a quasi-suspect class that triggers intermediate scrutiny in the equal protection context; the justification for a gender-based classification thus must be exceedingly persuasive."  *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.,* 743 F.3d 569, 577 (7th Cir. 2014) (citing *United States v. Virginia,* 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996)).  This "burden is met only by showing at least that the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives."  *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 723, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982); *see also Young v. County of Cook,* 616 F. Supp. 2d 834, 853 (N.D. Ill. 2009).

First, Defendant argues that Plaintiff has failed to establish the existence of sufficiently different treatment of male and female detainees implicating constitutional concerns.  In particular, Defendant argues that the only way the Sheriff's Office treats females differently than males is that female acquittees have the option to either stay at the RCDC or return to their living unit pending the processing of their discharge packet.  Defendant's argument fails to recognize that Plaintiff has presented evidence creating a triable issue of fact that staff pre-screens female

acquittees for discharge and gives preferential treatment when processing discharge packets of female detainees. Moreover, Plaintiff has presented evidence establishing a triable issue that Defendant's policy and procedures for discharging acquitted female detainees are safer than the policies in place for acquitted male detainees, and it is well-settled that jail officials have a duty to protect detainees from violent assaults at the hands of fellow detainees pursuant to the Fourteenth Amendment. Accordingly, Defendant's first argument is misplaced.[7]

Next, Plaintiff argues that Defendant has failed in his burden of offering an "exceedingly persuasive" justification for processing female acquittees differently than the male acquittees. Looking to Defendant Dart's justifications, he argues that the lower number of female detainees, fewer female living units, and lower number of incidents among female detainees allows for the different treatment because it is easier and less staff-intensive to transport and discharge female detainees. (Def.'s Stmt. Add'l Facts ¶¶ 12, 14.) Defendant further contends that the important governmental objective of safety in the CCJ underscores the need for gender-based differences and that courts have counseled against micro-managing the day-to-day operations of jails and prisons. *See Wolfish*, 441 U.S. at 545-46. In the context of prison and jail management, the Supreme Court also teaches that there must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." *Wolff*, 418 U.S. at 556.

In any event, Defendant's argument that it is less staff-intensive and easier to discharge female detainees is of no consequence in the Court's analysis of Plaintiff's Equal Protection

---

[7] Based on the argument that the CCJ's present procedures do not result in different treatment of male and female acquittees, Defendant asserts that the proper standard for Plaintiff's Equal Protection claim is the rational basis test. Under the circumstances, however, Plaintiff has presented sufficient evidence of gender-based differences triggering intermediate scrutiny in the equal protection context. *See Hayden,* 743 F.3d at 577.

claim because "[f]inancial constraints may not be used to justify the creation or perpetuation of constitutional violations." *Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 392, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). Also, Defendant's stated reasons do not show – as a matter of law – that discharging acquitted female detainees differently then acquitted male detainees serves "important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Hogan,* 458 U.S. at 723; *see also Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1273 (7th Cir. 1983) ("the equal protection clause of the fourteenth amendment [] requires that the party seeking to uphold a policy that expressly discriminates on the basis of gender must carry the burden of showing an 'exceedingly persuasive justification' for the differing treatment.") (citation omitted). There is no doubt that jail safety and security issues concern important governmental objectives, but Defendant fails to establish that the procedures the Sheriff's Office employs to discharged acquitted male detainees substantially relate to that objective. *See, e.g., Bullock v. Sheahan,* 568 F.Supp.2d 965, 973 (N.D. Ill. 2008) ("The blanket strip search policy of all male potential discharges is not substantially related to the achievement of prison safety and security as articulated by defendants.").

To further underscore Defendant failing in his burden of showing that the different treatment between acquitted male detainees and acquitted female detainees serves an important governmental interest, Plaintiff presents the RCDC Superintendent's testimony that he does not know why female acquittees get the option to remain in the RCDC pending the final review of their files as opposed to returning to their housing unit. (Pl.'s Stmt. Facts ¶ 69.) Although this is a relevant fact for the jury's consideration when determining Defendant's rationale for the

difference in treatment, it does not establish, as a matter of law, that Defendant's justification for a gender-based classification policy or procedure violates the Equal Protection Clause as Plaintiff suggests.

Because both sides have presented evidence showing disputed material facts for a jury to decide, the Court denies Defendant's and Plaintiff's summary judgment motions regarding Plaintiff's Equal Protection claim as alleged in Count II of the Amended Complaint.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendant's motion for summary judgment [184] and denies Plaintiff's motion for partial summary judgment [181].

**Dated:** January 7, 2016

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**