IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN OTERO, individually and on behalf of all others similarly situated,<br><br>                  **Plaintiff,**<br>     v.<br><br>THOMAS J. DART, SHERIFF OF COOK COUNTY and COOK COUNTY, ILLINOIS,<br><br>                  **Defendants.** | Case No. 1:12-cv-3148<br><br>Hon. Amy J. St. Eve |

**PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff moves for final approval of the settlement of this class action lawsuit. In support of this motion, Plaintiff states as follows

### I.    INTRODUCTION

After four years of litigation, the parties reached a settlement that provides Plaintiff and the class with the full injunctive relief sought at the outset of the litigation. More specifically, Defendants have agreed to implement policies and procedures that will promptly identify potential male court discharges, segregate them from other inmates returning from court, allow them to remain outside of the general jail population awaiting their release and ensure that all court discharges are conducted in a gender-neutral fashion. In addition to implementing these new policies and procedures, Defendants have also agreed to create a fund available for all class members to claim a cash award of up to $100 each.

In short, the settlement provides both comprehensive injunctive relief, as well as substantive monetary relief to affected class members. It is worth noting that Defendants have been sued on at least two prior occasions for similar practices, both of which settled on monetary

terms similar to this case, but neither of which accomplished changing the practices at issue. For this reason, and those that follow, Plaintiff respectfully requests the Court to grant final approval to this substantial and unprecedented settlement.

## II.     BACKGROUND

This lawsuit challenged the Cook County Sheriff's Office's "policy or practice of detaining … male inmates in an unreasonable manner with deliberate indifference to their constitutional rights following a trial or other court appearance where the individual is found not guilty … or otherwise receives a judicial determination requiring his release." Amended Complaint (Doc. 56), ¶ 27. More specifically, Plaintiff claimed that the Sheriff's Office had no procedures in place that acknowledge an acquittal and right to freedom and, consequently, he and other class members were treated like every other inmate returning from court, including being transported back into and detained within the general jail population. Plaintiff also brought an Equal Protection claim based on the Sheriff's Office practice of "treating male inmates differently than similarly situated female inmates who were found not guilty … or otherwise received a judicial determination requiring their release." *Id.*, ¶ 38.

Plaintiff filed this lawsuit on April 27, 2012. After surviving a motion to dismiss and engaging in preliminary discovery, the Court denied Plaintiff's initial motion for class certification. *See* Doc. 52. Plaintiff thereafter amended his complaint, which, among other things, clarified his original claims and added an Equal Protection claim. *See* Doc. 56. Plaintiff filed a renewed motion for class certification, which was granted by the Court on September 2, 2014. *See* Doc. 92. The Court certified the following class:

> All male inmates who while being detained by the Cook County Sheriff's Office were found not guilty, were acquitted, or had charges brought against them dismissed, and for whom the Sheriff's Office no longer had any legal right to detain from April 27, 2010 through the present.

*Id.*

Over the past several years, the parties engaged in substantial discovery, vigorously investigated the claims and defenses, took a dozen depositions and conducted two separate tours of the Cook County Jail and Criminal Court system. The parties also collectively engaged three experts, exchanged a number of expert reports and completed all expert discovery. Class member lists disclosed by Defendants revealed that the class has in excess of 44,000 members. After the data was analyzed by the claims administrator and duplicates were removed, the class ultimately was comprised of approximately 33,000 members.[1]

On October 30, 2015, both parties filed motions for summary judgment, which involved a substantial amount of evidence and extensive briefing over the next several months. On January 7, 2016, the Court entered an order denying Defendants' motion for summary judgment with respect to Plaintiff's Fourth Amendment claim, Fourteenth Amendment substantive due process claim and Equal Protection claim and granting Defendants' motion for summary judgment with respect to Plaintiff's Fourteenth Amendment procedural due process claim. *See* Doc. 224. The Court also denied Plaintiff's motion for summary judgment on his Equal Protection claim. *Id.* For the better part of the past year, the parties have been vigorously preparing for the trial of this matter, which was scheduled to commence March 7, 2016, a significant undertaking given the nature of the case and the complexities of trying a class action. The parties fully briefed a number of motions *in limine*, most of which the Court ruled on, and submitted a detailed final pretrial order, proposed jury instructions and *voir dire* questions.

The parties have informally met and conferred on numerous occasions over the past several years in an effort to reach a settlement. On January 21, 2016, the parties participated in a

---

[1] This figure has been revised from the initial estimate of approximately 36,000 class members as set forth in Plaintiff's Petition for Attorneys'' Fees and Costs and Incentive Award.

settlement conference before Magistrate Michael T. Mason in which a variety of settlement possibilities were discussed and considered. The parties thereafter continued to discuss settlement possibilities, which ultimately resulted in reaching a settlement. That settlement, however, was initially rejected by the County Board, requiring the parties to recommence their trial preparation.

On February 18, 2016, literally days before the trial was scheduled to commence, the parties participated in another settlement conference before this Court. With the Court's assistance and recommendations, the parties were able to reach agreement on all material terms of the settlement. After confirming the terms of the settlement on the record, the Court expressed its belief that it was a "fair and appropriate settlement." *See* February 18, 2016 Transcript at 8:7-8, attached hereto as **Ex. A**. The parties thereafter negotiated the language of a final settlement agreement (the "Settlement Agreement"), a copy of which is attached hereto as **Ex. B**. The County Board formally approved the settlement on March 2, 2016.

### III. SUMMARY OF SETTLEMENT TERMS

As noted above, the settlement provides both comprehensive injunctive relief, as well as monetary payments to individual class members. With respect to injunctive relief, Defendants have agreed to implement (i) a mechanism for promptly identifying potential male court discharges, (ii) a procedure under which all individuals so identified are segregated in the RCDC from other inmates returning from court as is currently done for potential female court discharges, (iii) a procedure under which individuals so identified are not required to return to the general jail population, (iv) a policy under which priority review in the Records Division is given to individuals identified as potential court discharges, and (v) a policy under which the administrative steps necessary to release a detainee after a finding of not guilty, an acquittal or

4

other dismissal of charges in court are undertaken in a gender-neutral manner. *See* Settlement Agreement at ¶ 1 (**Ex. B**). Defendants are required to report the details of these modifications to the Court, which will retain jurisdiction over the implementation and enforcement of these new policies and procedures for a period of six months to one year. *Id.* at ¶ 2.

In addition to injunctive relief, Defendants will also pay $100 to each class member who submits a claim up to a total of $1,104,250. *Id.* at ¶ 3. If the total amount of claims exceeds this amount then class member payments will be reduced on a pro-rated basis. *Id.* Plaintiff will also seek an incentive award of $15,000 for his service as a class representative, which will be paid separately by Defendants. *Id.* at ¶ 14. Class Counsel will seek an award of attorneys' fees and costs, also to be paid separately by Defendants, in an amount of $2,000,000. *Id.* at ¶ 15. Class Counsel will file their petition supporting its request for attorneys' fees and costs no later than 21 days prior to the deadline for class members to object to the settlement. *Id.*

The parties retained of KCC, LLC to administer the notice and claims administration process. *Id.* at ¶ 5. Class members received notice by mail at the addresses they provided to the Cook County Sheriff's Office. *Id.* at ¶ 6. A summary of the notice was also posted at the Cook County Department of Corrections ("CCDOC") in an area (or areas) where male detainees are housed or frequently held. *Id.* at ¶ 8. The settlement administrator also developed and has maintained a website that contains a copy of the notice, information about the settlement and a mechanism though which class members can submit claims online. *Id.* at ¶ 9. Defendants shall pay all fees and costs incurred for the administration of the settlement up to $95,000. *Id.* at ¶ 12. Any administration fees or costs in excess of this amount will be incurred by Class Counsel. *Id.*

Class members had the option of excluding themselves from the class and the settlement by sending a written request for exclusion to the claims administrator no later than 77 days after

5

the entry of an order preliminarily approving the settlement. *Id.* at ¶ 16. Within this same amount of time, class members who do not opt-out had the right to object to the proposed settlement and/or the attorneys' fees and costs requested by Class Counsel by filing a written objection with the Court and delivering a copy of the objection to Class Counsel and counsel for Defendants. *Id.* at ¶ 17.

The settlement administrator performed all of the functions required of it as set forth in the Settlement Agreement, including mailing the notice and claim form to class members, sending CAFA notices to the appropriate authorities, establishing a toll-free helpline and developing and maintaining a settlement website. *See* Declaration of Corinne Kirmil ("Kirmil Decl."), attached hereto as **Ex. C**. The settlement administrator also monitored exclusion requests and verified and processed claims. *Id.* at ¶¶ 13, 15.

## IV.     ARGUMENT

It is well established that settlements are the preferred means of resolving litigation, particularly in class actions where substantial resources can be conserved by avoiding the time, cost and rigor of prolonged litigation. *See Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir.1996) ("Federal courts naturally favor the settlement of class action litigation."); *Armstrong v. Bd. of Sch. Dirs. of Milwaukee,* 616 F.2d 305, 313 (7th Cir.1980), *overruled on other grounds by Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.").

A district court should approve a class action settlement "if it determines after a hearing that the proposed settlement is 'fair, reasonable, and adequate.'" *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (quoting Fed.R.Civ.P.

Case: 1:12-cv-03148 Document #: 282 Filed: 07/20/16 Page 7 of 12 PageID #:5766

23(e)(3)). "To evaluate the fairness of a settlement, a court must consider 'the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement.'" *Id.* (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir.2006)). Because each of these factors favors approval of the settlement reached here, the Court should find the settlement fair, reasonable, and adequate and grant final approval.

**A.     The terms of the settlement are commensurate with the strength of Plaintiff's claims.**

The first, and most important, factor favors approval because the terms of the settlement are commensurate with the strength of Plaintiff's claims. *See In re AT & T Mobility*, 789 F. Supp. 2d at 958 (quoting *Synfuel,* 463 F.3d at 653) ("The 'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'"). While Plaintiff believes strongly in the merits of his case, Defendants vigorously contested both liability and the ability of Plaintiff and class members to recover damages.[2]

Because the Court denied both parties' motions for summary judgment, the merits of the case ultimately would have been decided by a jury, the outcome of which was far from certain for either side. The terms of the settlement, on the other hand, provide full injunctive relief, as well as cash payments in line with settlements of other similar cases. *See Bullock v. Sheahan*,

---

[2] For example, one outstanding issue that had yet to be decided by the Court was Defendants' argument that Plaintiff could recover, at most, nominal damages of $1 per class member for the class-wide injury alleged. *See, e.g.,* Final Pretrial Order (Doc. 252) at 91, 138-141 (stating Defendants' opposition to Plaintiff's proposed damage instruction and offering alternative instruction on nominal damages). Had Defendants prevailed on this issue at the jury instruction conference, it would have been difficult for Plaintiff to recover any damages for the class.

Case No. 04-cv-1051 (N.D. Ill.) at Doc. 466 (approving settlement providing no injunctive relief and payments of between $100-$200 to each class member in class action alleging over detention that included unlawful strip search); *Watson v. Sheahan*, 94-cv-6891, 1998 WL 708803, *1 (N.D. Ill. Sept. 30, 1998) (referencing approval of settlement "on behalf of a class of individuals who were allegedly detained for an unconstitutional period of time after their legal release from custody" under which "defendants agreed to pay each class claimant $90"); *see also Donovan v. Sheriff*, 3:11-cv-133, 2015 WL 7738035 (N.D. Ind. Dec. 1, 2015) (approving settlement providing class members with a payment of $51.15 per hour of over detention); *Bickel v. Sheriff of Whitley Cty.,* No. 08-cv-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) (approving settlement providing class members with a payment of $43 per hour of over detention).

In short, the settlement provides comprehensive and meaningful relief for hotly-contested claims. Indeed, the relief afforded to class members in this settlement very well could be greater than what they would have been entitled to even had Plaintiff prevailed at trial. For these reasons, the first factor clearly weighs in favor of final approval of the settlement.

**B.     The likely complexity, length and expense of continued litigation supports final approval of the settlement.**

It goes without saying that trying a class action lawsuit to conclusion would have been a complex, lengthy and expensive endeavor. The trial in and of itself would have been a lengthy and complicated process. In fact, several trial issues were still left unresolved prior to the settlement, such as how damages would be tried and whether subsequent individual hearings would be necessary, which, if so, could have taken years to complete. Because of the important constitutional issues raised in this suit, appeals almost certainly would have also followed any judgment. The second factor, therefore, also favors final approval of the settlement.

## C. There was scant opposition to the settlement by class members.

There was virtually no opposition to the settlement amongst class members. Of the approximately 33,000 class members to whom notice was sent, only eight timely opted out. *See* Kirmil Decl. at ¶ 13, (**Ex. C**).[3] In other words, 99.9% of the class chose to remain members of the class and be bound by the settlement.

More significantly, there were only two objections to the settlement lodged by class members. *See* Doc. 277; Doc. 278. At least one of these objections is based on a misunderstanding as to what case this settlement is resolving as it refers to a prior "original agreement" in an unrelated suit for malicious prosecution, wrongful arrest and exposure to toxic asbestos. *See* Doc. 278 (referencing case numbers of unrelated litigation). The other objection only took issue with the amount of the monetary payment made available to class members, but lacked any substantive explanation or basis. *See* Doc. 277. As noted above, the monetary amount made available to class members was fair, reasonable and in line with settlements of similar over-detentions cases.[4]

The lack of any substantive opposition to the settlement, therefore, favors final approval of the settlement. *See Isby*, 75 F.3d at 1200 (affirming approval of class action settlement of prisoner suit despite the fact that 13% of the class submitted written objections to the settlement); *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 07-cv-2898, 2012 WL 651727, *6 (N.D. Ill. Feb. 28, 2012) (holding that 3 objectors out of 1,300 class members "indicates that the class members consider the settlement to be in their best interest."); *In re Mexico Money Transfer*

---

[3] One more class member, Enos Taplin, Jr., submitted an untimely request for exclusion. *See* Kirmil Decl. at ¶ 13 and Ex. 4. The parties have no opposition to honoring Mr. Taplin's untimely request for exclusion.

[4] Neither of these objections challenged the non-monetary aspects of the settlement, nor did they take issue with the requested attorneys' fees and costs or incentive award.

*Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000), *aff'd sub nom. In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) ("99.9% of class members have neither opted out nor filed objections to the proposed settlements. This acceptance rate is strong circumstantial evidence in favor of the settlements.").[5]

### D.     The settlement is supported by the opinion of competent counsel.

In connection with the fourth factor – the opinion of competent counsel – Plaintiff submits the Declaration of Myron M. Cherry, a lawyer with over 50 years of experience in complex and class action litigation. *See* Declaration of Myron M. Cherry ("Cherry Decl."), attached hereto as **Ex. D**.  Based on his extensive experience, Mr. Cherry opines that the settlement is fair, reasonable and adequate and provides a significant benefit to the class. *Id.* at ¶ 5; *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586-87 (N.D. Ill. 2011) (concluding that class counsel's opinion that settlement was fair supported approval of the proposed settlement where counsel had extensive experience in class actions and complex litigation); *Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1096 (C.D. Ill. 2012) (considering declarations of class counsel expressing their opinions that the proposed settlement was fair, reasonable and adequate); *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 10-cv-3873, 2011 WL 320998 (C.D. Cal. Jan. 27, 2011) ("Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel.").

Plaintiff also submits the declaration of Edward T. Joyce, a seasoned and experienced lawyer who did not represent any of the parties to this suit. *See* Declaration of Edward T. Joyce,

---

[5] In contrast to the virtually non-existent opposition to the settlement, thousands of class members affirmatively participated in the settlement by submitting a claim for payment. *See* Kirmil Decl. at ¶ 15 (**Ex. C**) (stating that 6,995 of the approximately 33,000 class members submitted a claim for a monetary payment, as well as hundreds of other potential claims that are still being verified). This robust response rate further evidences that the settlement was received favorably by class members, particularly considering that "'claims made' settlements regularly yield response rates of 10 percent or less." *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005).

10

attached hereto as **Ex. E**. Mr. Joyce similarly opines that the non-monetary aspects of the settlement provide real and meaningful changes to the Sheriff's release policies and practices and are commensurate with the allegations of the suit, the monetary payments available to class members provide further tangible relief and are in line with settlements of other similar cases and the settlement as a whole is more than fair, reasonable and adequate. *Id.* at p. 4.

Lastly, Plaintiff submits the declaration of Rob Warden, the Executive Director of the Bluhm Legal Clinic, Center on Wrongful Convictions. Mr. Warden, who also has no connection to or involvement in this litigation, similarly opines that the proposed settlement is fair, reasonable and provides important and meaningful relief to the class. *See* Declaration of Rob Warden, attached hereto as **Ex. F**.

The opinion of Class Counsel, coupled with the independent opinions of other reputable members of the legal community, provide considerable support to the final approval of the settlement.

**E.     The stage of the proceedings and the amount of discovery completed at the time of settlement support final approval.**

The stage of the proceedings and the amount of discovery completed at the time of settlement clearly weighs in favor of final approval. The case settled on the eve of trial and only after the parties engaged in substantial discovery, took numerous depositions, conducted two separate tours of the Cook County Jail and Criminal Court system, completed all fact and expert discovery, fully briefed several motions *in limine* and submitted a detailed final pre-trial order, proposed jury instructions and *voir dire* questions. *See* Cherry Decl. at ¶ 6 (**Ex. D**).

Due to the extensive investigation and discovery that occurred, both parties were in position to fully assess the strengths and weaknesses of the claims and defenses in negotiating this settlement. Accordingly, "the advanced stage of the proceedings weighs heavily in favor of

approving the settlement." *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1170-71 (N.D. Ill. 1997) (approving settlement reached "after the completion of massive discovery, various legal and evidentiary pretrial rulings, complete briefing on a motion for partial summary judgment, [] submission of a detailed final pretrial order *** and after trial preparation was virtually complete"); *see also Am. Int'l Grp.*, 2012 WL 651727, *8 (approving settlement that was reached "after over three years of vigorous litigation [and] substantial discovery had been completed").

**WHEREFORE,** Plaintiff requests the Court to enter an order finding that the settlement of this matter is fair, reasonable and adequate and granting final approval of the settlement.

Dated: July 20, 2016

Respectfully Submitted,

BRIAN OTERO, individually and on behalf of all others similarly situated,

By: _____/s/ Jacie C. Zolna_____
One of the Attorneys for Plaintiff and the Class

Myron M. Cherry
Jacie C. Zolna
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Phone: (312) 372-2100

Robert M. Foote
Kathleen Currie Chavez
Peter Lawrence Currie
Craig S. Mielke
Matthew J. Herman
FOOTE, MIELKE, CHAVEZ & O'NEIL LLC
10 West State Street, Suite 200
Geneva, Illinois 60134
Phone: (630) 232-7450
*Attorneys for Plaintiff and the Class*