**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRIAN OTERO**, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 12 C 3148 |
| v. | ) ) | Judge Amy J. St. Eve |
| **THOMAS J. DART, SHERIFF OF COOK COUNTY**, and **COOK COUNTY ILLINOIS**, | ) ) ) ) | |
| Defendants. | ) ) | |

**<u>ORDER GRANTING FINAL APPROVAL & DISMISSAL OF LAWSUIT</u>**

The Plaintiff, Brian Otero, for himself and on behalf of the Class, having appeared before the Court on August 11, 2016, for a hearing on final approval of the class action settlement in the above-captioned matter, the Court having reviewed the Plaintiff's Motion for Final Approval of Class Action Settlement and other related materials submitted by the Parties, as well as the Parties' presentation at the hearing on final approval and otherwise being fully informed in the premises:

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1. This Court has jurisdiction over the subject matter of this action and over all Parties to this action pursuant to 28 U.S.C. § 1343, including all members of the Class which was certified, prior to settlement, after a contested hearing by Order dated September 22, 2014 (ECF No. 92), and defined as follows:

> All male inmates who while being detained by the Cook County Sheriff's Office were found not guilty, were acquitted, or had charges brought against them dismissed, and for whom the Sheriff's Office no longer had any legal right to detain from April 27, 2010 through the present.

2. The Court reaffirms its approval of Kurtzman Carson Consultants, LLC ("KCC") located at 3301 Kemer Boulevard, San Rafael, California, as the "Class Administrator."

3. The Notice of Class Action Settlement ("Class Notice") sent to the Class by the Class Administrator via First Class Mail at the addresses they provided to the Cook County Sheriff's office adequately informed Class Members of the terms of the Settlement Agreement, their anticipated recovery if the Settlement was approved, the process available to them to obtain monetary relief, their right to request exclusion from the Settlement and pursue their own remedies, and their opportunity to file written objections and to appear and be heard at the final approval hearing regarding approval of the Settlement Agreement. The Class Notice also adequately informed Class Members of the telephone number and email address for Class Counsel and for the Class Administrator. A summary of the notice was also posted at the Cook County Department of Corrections ("CCDOC") in an area (or areas) where male detainees are housed or frequently held. The settlement administrator also developed and has maintained a website that contains a copy of the notice, information about the settlement and a mechanism through which Class Members can submit claims online. The Court finds that the Class Notice satisfied the requirements of Rule 23(c)(2)(B) and Rule 23(e)(1).

4. The Court hereby approves the proposed Settlement Agreement and finds that the Settlement is fair, reasonable, and adequate to all Class Members. "To evaluate the fairness of a settlement, a court must consider 'the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement.'" *In re AT&T Mobility Wireless Data Servs.*

*Sales Tax Litig.,* 789 F.Supp.2d 935, 958 (N.D. Ill. 2011) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir.2006)). Each of the five factors favors approval of the settlement reached here and supports the Court's finding that the settlement is fair, reasonable and adequate:

    **I. Strength of Plaintiff's case**: Because the Court denied both parties' motions for summary judgment, the merits of the case ultimately would have been decided by a jury, the outcome of which was far from certain for either side. The terms of the settlement, on the other hand, provide full injunctive relief, as well as cash payments in line with settlements of other similar cases. *See Bullock v. Sheahan*, Case No. 04-cv-1051 (N.D. Ill.) at Doc. 466 (approving settlement providing no injunctive relief and payments of between $100-$200 to each class member in class action alleging over detention that included unlawful strip search); *Watson v. Sheahan*, 94-cv-6891, 1998 WL 708803, *1 (N.D. Ill. Sept. 30, 1998) (referencing approval of settlement "on behalf of a class of individuals who were allegedly detained for an unconstitutional period of time after their legal release from custody" under which "defendants agreed to pay each class claimant $90"); *see also Donovan v. Sheriff*, 3:11-cv-133, 2015 WL 7738035 (N.D. Ind. Dec. 1, 2015) (approving settlement providing class members with a payment of $51.15 per hour of over detention); *Bickel v. Sheriff of Whitley Cty.,* No. 08-cv-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) (approving settlement providing class members with a payment of $43 per hour of over detention). In short, the settlement provides comprehensive and meaningful relief for hotly-contested claims. Indeed, the relief afforded to class members in this settlement very well could be greater than what they would have been entitled to even

had Plaintiff prevailed at trial. For these reasons, the first factor clearly weighs in favor of final approval of the settlement.

**II.  The likely complexity, length and expense of continued litigation:** It goes without saying that trying a class action lawsuit to conclusion would have been a complex, lengthy and expensive endeavor. The trial in and of itself would have been a lengthy and complicated process. In fact, several trial issues were still left unresolved prior to the settlement, such as how damages would be tried and whether subsequent individual hearings would be necessary, which, if so, could have taken years to complete. This is especially true where, as here, at least 6,995 valid claims were submitted to the Claims Administrator. Because of the important constitutional issues raised in this suit, appeals almost certainly would have also followed any judgment. The second factor, therefore, also favors final approval of the settlement.

**III.  Opposition to the settlement by class members:** There was virtually no opposition to the settlement amongst Class Members. The Court finds that of the 33,134 eligible Class Members, only nine Class Member requested exclusion from the Class, only two Class Members objected to the Settlement Agreement and 6,995 valid claims were submitted to the Class Administrator. In other words, 99.9% of the Class chose to remain members of the Class and be bound by the settlement and over 21% submitted timely claims. This robust response rate further evidences that the settlement was received favorably by class members, particularly considering that "'claims made' settlements regularly yield response rates of 10 percent or less." *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005). Significantly, there

were only two objections to the settlement lodged by class members. *See* Doc. 277; Doc. 278. One of these objections is based on a misunderstanding as to what case this settlement is resolving as it refers to a prior "original agreement" in an unrelated suit for malicious prosecution, wrongful arrest and exposure to toxic asbestos. *See* Doc. 278 (referencing case numbers of unrelated litigation). The other objection only took issue with the amount of the monetary payment made available to class members, but lacked any substantive explanation or basis. *See* Doc. 277. The monetary amount made available to class members was fair, reasonable and in line with settlements of similar over-detentions cases. The lack of any substantive opposition to the settlement, therefore, favors final approval.

    **IV.**  **The settlement is supported by the opinion of competent counsel:** In connection with the fourth factor – the opinion of competent counsel – the Court has reviewed the Declaration of Class Counsel Myron M. Cherry, a lawyer with over 50 years of experience in complex and class action litigation; the declaration of Edward T. Joyce, a seasoned and experienced complex civil litigation lawyer who did not represent any of the parties to this suit, and the declaration of Rob Warden, the Executive Director of the Bluhm Legal Clinic, Center on Wrongful Convictions. Mr. Warden also has no connection to or involvement in this litigation. The Court finds that these declarations support the conclusion that the non-monetary aspects of the settlement provide real and meaningful changes to the Sheriff's release policies and practices and are commensurate with the allegations of the suit, the monetary payments available to Class Members provide further tangible relief and are in line with settlements of other similar cases, and that the settlement as a whole is fair,

reasonable and adequate.

**V. The stage of the proceedings and the amount of discovery completed at the time of settlement:** The case settled on the eve of trial and only after the Parties engaged in substantial discovery, took numerous depositions, conducted two separate tours of the Cook County Jail and Criminal Court system, completed all fact and expert discovery, fully briefed several motions *in limine* and submitted a detailed final pre-trial order, proposed jury instructions and *voir dire* questions. Due to the extensive investigation and discovery that occurred, both Parties were in position to fully assess the strengths and weaknesses of the claims and defenses in negotiating this settlement. Accordingly, the advanced stage of the proceedings weighs heavily in favor of approving the settlement.

5. The Court approves the Class Relief as provided in Section II of Settlement Agreement as follows:

**I. Non-Monetary Relief:** The Sheriff will make modifications to his release policies and practices to provide the following:

a. A mechanism for promptly identifying Potential Male Court Discharges after their court appearance. For purposes of this Order, a "Potential Male Court Discharge" shall refer to a male detainee who while being detained by the Sheriff was found not guilty, was acquitted or otherwise had the charges brought against him dismissed in court. The Parties understand and acknowledge that in order for Potential Male Court Discharges to be identified, the Circuit Court must issue and the Clerk of the Circuit Court process and provide to Defendants a mittimus which includes

the Court's order. Delays in the issuance and disclosure of the mittimus are not in the control of Defendant Cook County Sheriff.

  b. Upon identification of a Potential Male Court Discharge as set forth in Paragraph 5.I.a. above, a procedure under which all individuals so identified are segregated in the RCDC from other inmates returning from court as is currently done for potential female court discharges.

  c. A procedure under which individuals identified as Potential Male Court Discharges are not required to return to the general jail population.

  d. A policy in the Records Division of the Cook County Department of Corrections (the "CCDOC") under which the administrative steps necessary to release a detainee whose situation would define him as a member of the class as defined in Paragraph 5.I.a.are given priority over processing the paperwork of other inmates returning from court back to the CCDOC who are not subject to release.

  e. A policy in the Records Division of the CCDOC under which the administrative steps necessary to release a detainee after a finding of not guilty, an acquittal or other dismissal of charges in court are undertaken in a gender-neutral manner (*i.e.*, females subject to release will not be given priority or preferential treatment over males subject to release).

  **II.** **Timing and Enforcement of Non-Monetary Relief:** The modifications necessary to effectuate these policies and practices shall be implemented no later than ninety (90) days after the entry of this Order. Within

ninety (90) days after the entry of this Order, Defendants shall also file with the Court a status report setting forth in detail the modifications the Sheriff undertook to effectuate the policies and practices set forth in Paragraph 5.I. above. The District Court shall retain jurisdiction with respect to the implementation and enforcement of the policies and practices set forth in Paragraph 1 above for nine months. Additional time may be sought by Defendants to implement the modifications upon a motion to the Court or by agreement of the Parties.

   **III.**   **Monetary Payment to Class Members:** In addition to the injunctive relief set forth above, Defendants, through the Claims Administrator, will also pay one-hundred dollars ($100) to each Class Member who submitted a claim (the "Class Member Payments").

   **IV.**   **Timing of Class Member Payments:** Defendants, through the Claims Administrator, shall within twenty-one (21) days after the Final Settlement Date mail the Class Member Payments to those Class Members who submitted a valid and timely claim. "Final Settlement Date" means the date in which either of the following events has occurred: (a) if there is no appeal from this Order, thirty-one (31) days after the Court enters this Order and provides any objector notice that the Court entered this Final Approval Order, or (b) if an appeal is taken from this Final Approval Order, seven (7) days after a reviewing court either affirms this Final Approval Order or denies review and either all avenues of appeal have been exhausted or the time for seeking further appeals has expired.

 6.   The Court finds Class Representative Brian Otero in prosecuting the case on behalf of the Class made a substantial contribution to its outcome, and is therefore deserving

of a service award in recognition of his effort. Plaintiff took the initiative to be named in the lawsuit, assisted in the case investigation and stayed actively involved in the litigation for four years, including responding to discovery, being deposed, routinely communicating with Class Counsel and reviewing pleadings, depositions and other materials. A Service Award in the amount of $15,000.00 is therefore approved for Plaintiff Brian Otero.

7. The Court finds the requested attorneys' fees and costs are fair and reasonable considering the excellent value of the settlement, the benefits conferred on the Class and Class Counsel's knowledge and experience. In determining the reasonableness of an award of attorneys' fees, the Court may use either the lodestar or percentage-of-fund method. Under the circumstances of this case and the nature of the relief obtained, the lodestar method is the most appropriate way for determining Class Counsel's fees. *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) ("The 'lodestar' method … is the most appropriate starting point" under civil rights fee statute."). Attorney fees under the lodestar method are determined by "multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001). "A reasonable hourly rate should reflect the attorney's market rate, defined as 'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" *Id.* (quoting *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999). The Court has reviewed Class Counsel's submissions including detailed summaries of their billing records reflecting the amount of time expended on this matter, by whom and the hourly rate for such services and the declaration of Edward T. Joyce attesting to the reasonableness of the attorneys' fees requested by Class Counsel. The Court finds Class Counsel's hourly rates are

consistent with the fair market rate for attorneys of comparable experience, skill and reputation in the Chicago legal market and comparable markets nationwide, and are the rates at which the attorneys have been retained by other paying clients. The amount of time expended by Class Counsel is reasonable given the nature of the services performed and the complexity of the case. Indeed, this case involved novel questions, extensive discovery, exhaustive investigative efforts, two rounds of class certification briefing, three experts and extensive preparation for trial. For over four years, Class Counsel dedicated substantial time and incurred substantial out-of-pocket costs in litigating this case on a contingency basis with no guarantee of payment. Perhaps most importantly, Class Counsel achieved an excellent settlement that not only provides unprecedented reforms and changes to the challenged practices, but also substantive monetary payments to class members. Furthermore, while the lodestar in class actions is typically increased by applying a multiplier due to the contingent nature of the undertaking, the attorneys' fees requested here are actually substantially less than Class Counsel's lodestar amount. Lastly, the costs incurred by Class Counsel were also reasonable and necessary, the most significant amount of which was for Plaintiffs' experts who prepared several detailed and substantive reports, conducted two tours of the Cook County Jail and court system and had their depositions taken, which took place in Cleveland, Ohio and San Jose, California. Other significant costs were expended on depositions of Defendants' representative, all of which were used extensively during summary judgment briefing and necessary for trial preparation. The Court approves fees and costs to Class Counsel in the sum of $2,000,000.00, and Orders such attorney's fees and costs be paid within 35 days of entry of this Order, as set forth in the settlement agreement.

    8.    This Court hereby dismisses all claims released in the Settlement Agreement on

the merits and with prejudice and without awarding costs to any of the Parties as against any other settling Party, except as provided in the Settlement Agreement.

9. The Court orders that all Plaintiff and Class Members release and discharge the "Released Claims" arising during the Class Period against Defendants as reflected in the Settlement Agreement.

10. The Court denies the two objections filed by class members. Doc. 277; Doc. 278.

11. The Court grants final approval of the Settlement. This matter is dismissed with prejudice.

12. This Court retains jurisdiction solely for the purpose of interpreting, implementing, and enforcing the Settlement Agreement consistent with its terms.

ORDERED.

Dated: August 11, 2016

_____
**AMY J. ST. EVE**
**United States District Court Judge**